**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Frederick William HELDBERG,**
**Defendant–Appellant.**

**No. 89–50587.**

United States Court of Appeals,
Ninth Circuit.

Submitted June 5, 1990.[*]

Decided June 20, 1990.

Janice D. Hogan, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

John J. Rice, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

---

[*] The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Before ALARCON, BRUNETTI and O'SCANNLAIN, Circuit Judges.

ALARCON, Circuit Judge:

Frederick Heldberg appeals from the district court's imposition of a 16–month prison sentence. He seeks reversal on the ground that it was improper for the district court to add two points to his offense level for the possession of a firearm during the importation of controlled substances.

We must determine whether it is clearly improbable that an unloaded firearm, locked in a briefcase in the trunk of a car, was connected to the importation of controlled substances found in the defendant's pockets at the time of his arrest in the vehicle at a border port of entry. We affirm because we conclude that connection of the firearm to the importation of controlled substances was not, under these circumstances, clearly improbable.

## I.

The presentence report discloses the following facts: On May 8, 1989, Heldberg entered the United States from Mexico at the port of entry at San Ysidro, California. He was driving a Pontiac Fiero. He was accompanied by a woman. Heldberg and his passenger declared to a custom's agent that they were not importing any items from Mexico. They were referred to a secondary inspection area.

After conducting a pat-down search, Customs Inspector Shatto ordered Heldberg to empty his pockets. Heldberg produced a plastic baggie from his right-front pant's pocket containing 4.31 grams of marijuana. A search of the same pocket disclosed .2 grams of cocaine and 5.5 grams of methamphetamine packaged in five separate baggies.

Customs Agents found a briefcase in the trunk of the Pontiac Fiero. The briefcase contained an unloaded .25 caliber semi-automatic handgun, two ammunition clips, a box of ammunition, Heldberg's wallet, his Texas driver's license, a set of scales, a mirror, and a pipe. The scales, the mirror, and the pipe had narcotics residue on them.

Heldberg was arrested and advised of his constitutional rights. Heldberg signed a written waiver of his *Miranda* rights. He admitted ownership and possession of the controlled substances. He stated that he purchased them in Mexico. Heldberg told the arresting officers that he had obtained the handgun from a friend. Heldberg was indicted on May 17, 1989. On August 1, 1989, he entered a plea of guilty to one count of importation of a controlled substance in violation of 21 U.S.C. §§ 952 and 960.

The probation officer computed the Base Offense Level as 12. He added two points because Heldberg was in possession of a firearm during the commission of the crime of importation of controlled substances. A downward adjustment of two points was calculated because Heldberg accepted responsibility. The Criminal History Level was computed at 1, the total offense level at 12, and a sentence of 16 months was recommended.

Heldberg filed an objection to the presentence report on September 26, 1989. He argued that it was improper to add two points for the possession of the firearm found in the locked trunk compartment of the Pontiac Fiero.

At the sentencing hearing, Heldberg testified that the handgun belonged to a person named Scott. Heldberg was owed $45.00 by Scott for services performed in repairing his car. Heldberg testified that he took possession of Scott's handgun until he was paid. Heldberg had placed the handgun in his briefcase on May 8 because Scott was supposed to pay him on that date.

The district court concluded that Heldberg's testimony was "not particularly credible." The court also stated "it just doesn't make sense to me."

## II.

The district court found that Heldberg possessed the .25 caliber handgun during the importation of controlled substances from Mexico. The district court increased the offense level by 2 levels, pursuant to section 2D1.1(b)(1) of the Sentencing Guide-

lines. Section 2D1.1(b)(1) provides in pertinent part as follows: "If a dangerous weapon (including a firearm) was possessed during commission of the offense [of importation of controlled substances], increase by 2 levels." United States Sentencing Comm'n, *Guidelines Manual* § 2D1.1(b)(1) (1989) (hereinafter U.S.S.G. § __).

### III.

 Heldberg contends that the evidence presented in the presentence report shows that it is clearly improbable that the handgun was connected to the importation of a controlled substance. He asserts that the fact that the firearm was unloaded, and not on his person, demonstrates a clear improbability that it was possessed in connection with the importation of controlled substances. He argues further that because he imported only a user's quantity of controlled substances, it was improper to enhance his sentence based on the court's finding that he was a street dealer of drugs. We review a district court's application of the Sentencing Guidelines *de novo*. *United States v. Restrepo*, 884 F.2d 1294, 1295 (9th Cir.1989). We review a district court's conclusion that a defendant possessed a firearm during the commission of an offense for clear error. *Id.* at 1296.

Heldberg relies on our decision in *United States v. Restrepo* and the Fifth Circuit's opinion in *United States v. Vasquez*, 874 F.2d 250 (5th Cir.1989), in support of his contentions. His reliance is misplaced. In *Restrepo*, we held that "in applying § 2D1.1(b)(1), the court need not find a *connection* between the firearm and the offense. If it finds that the defendant *possessed* the weapon during the commission of the offense, the enhancement is appropriate." *Id.* at 1296 (emphasis in original). The district court in *Restrepo* applied section 2D1.1(b)(1) because the arresting officers found a loaded .32 caliber automatic pistol hidden between the box spring and the mattress of defendant's bed. *Id.* at 1295. Restrepo was convicted of distribution of a controlled substance. *Id.* The evidence showed that some of the sales were made at Restrepo's residence. *Id.* The commentary to the sentencing guidelines contains the following discussion:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1(b)(1) at commentary n. 3.

Restrepo argued that the "clearly improbable" connection exception contained in the commentary quoted above was applicable to the facts in his case. In rejecting his contention, we explained:

> Restrepo argued for the application of the exception at his sentencing hearing. The court distinguished this case from an example in the Guidelines Commentary. The enhancement does not apply where a defendant is arrested with an unloaded hunting rifle in his closet. *Id.* § 2D1.1 at commentary note 3. The facts demonstrate it was not clearly improbable that the weapon found in his bed was connected with the drug offenses.

*Restrepo*, 884 F.2d at 1296.

The "clearly improbable" connection exception to section 2D1.1(b)(1) is also inapplicable in the matter before us. Heldberg was not arrested in his home. He had a .25 caliber semi-automatic handgun in the trunk of his vehicle. A handgun, such as a .25 caliber semi-automatic revolver, is designed to be used to threaten, injure, or kill human beings; it is not ordinarily used to hunt game. Furthermore, like Restrepo, whose gun was located in the house from which he sold cocaine, Heldberg was engaged in the commission of a crime in the vehicle where he had placed the firearm.

In *United States v. Vasquez*, 874 F.2d 250 (5th Cir.1989), the Fifth Circuit concluded that it was error to apply section 2D1.-1(b)(1) because the facts showed that a loaded .38 caliber pistol was found in the defendant's bedroom, several miles away from the place where he bought a con-

trolled substance. *Id.* at 251. Thus, Vasquez did not have access to his weapon during the purchase of a controlled substance. *Id.* In the instant matter, the firearm was in the same vehicle, at the same time that Heldberg was engaged in the importation of controlled substances. In *United States v. Gillock*, 886 F.2d 220 (9th Cir.1989) (per curiam), we held that section 2D1.1(b)(1) is satisfied if the weapon is located in "close proximity" during the commission of the offense. *Id.* at 223. In this matter, the firearm was a few feet away and readily accessible to Heldberg during the importation of controlled substances in the event he desired to use it to commit an act of violence.

■ The fact that the .25 caliber semiautomatic handgun was unloaded is not controlling. The Sentencing Commission has interpreted section 2D1.1(b)(1) as applying to an object that appears to be a dangerous weapon in the possession of a defendant during the commission of an offense. U.S.S.G. § 1B1.1 at commentary n. 1(d). In *United States v. Smith*, 905 F.2d 1296 (9th Cir.1990), we were called upon to determine whether an inoperable .22 caliber revolver is "a dangerous weapon (including a firearm)" as that term is used in the Sentencing Guidelines. *See* U.S.S.G. § 1B1.1 at commentary n. 1(d), (e). We concluded that "an inoperable gun is a 'dangerous weapon' under the Sentencing Guidelines." *Id.* at 1300; *see also United States v. Burke*, 888 F.2d 862 (D.C.Cir. 1989) (applying § 2D1.1(b)(1) to an inoperable weapon). We stated in *Smith* that "[a] 'firearm' is 'any weapon which is *designed* to or may *readily be converted* to expel any projectile by the action of an explosive.'" *Id.* at 1300 (quoting U.S.S.G. § 1B1.1 commentary at n. 1(e) (emphasis added). "'[W]here an object *that appeared to be a dangerous weapon* was brandished, displayed, or possessed, [we] treat that object as a dangerous weapon.'" *Id.* at 1300 (quoting U.S.S.G. § 1B1.1 at commentary n. 1(d)) (emphasis in original). Obviously, a .25 caliber semi-automatic handgun may be readily converted to expel a projectile simply by loading it with ammunition. Moreover, it is evident that an unloaded .25 caliber semi-automatic handgun *appears* to be a dangerous weapon.

Heldberg's contention that it is clearly improbable that the possession of a firearm during the importation of a user's quantity of drugs is connected to that offense is unsupported by existing law and is contrary to logic and reality. The importation and possession of a controlled substance is illegal. Unfortunately, it is a matter of common knowledge that some persons who have firearms in their possession commit acts of violence to avoid arrest. A person who purchases controlled substances may be defrauded or robbed of his funds prior to the transaction by unscrupulous drug dealers. A person in possession of controlled substances is also vulnerable to a forceable taking of his contraband by other addicts or thieves. It is clearly probable that persons who traffic in narcotics would arm themselves to avoid these hazards. *See United States v. Willis*, 899 F.2d 873, 875 (9th Cir.1990) (" 'trafficking in narcotics is very often related to the carrying and use of firearms' ") (quoting *United States v. Ramos*, 861 F.2d 228, 231 n. 3 (9th Cir. 1988)). Heldberg has failed to demonstrate that it is clearly improbable that the possession of a firearm is connected to the importation of a user's quantity of a controlled substance.

AFFIRMED.