**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael A. AJIBOYE, Defendant–
Appellant.**

No. 91–50371.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 1992.

Decided April 14, 1992.

Oswald Parada, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Steven Zipperstein and Kimberly A. Dunne, Asst. U.S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Before: CANBY, KOZINSKI and FERNANDEZ, Circuit Judges.

KOZINSKI, Circuit Judge:

Michael Ajiboye's principal argument is that the district judge's *Allen* charge improperly coerced the jury into returning guilty verdicts on both counts charged against him.

## Facts

Ajiboye, a former mail carrier for the Postal Service, was charged with one count of theft of mail by a Postal Service employee and one count of possessing stolen mail. *See* 18 U.S.C. §§ 1708, 1709. He was tried before a jury. After a few hours of deliberation, the jurors sent a note to the trial judge informing him that they were unable to arrive at a verdict and that it was unlikely there would be a change in the vote. According to the district judge's subsequent recollection, the note indicated that the jury was split 9–3 to convict on one count and 9–3 to acquit on the other. Out of the presence of the jury, the judge informed the parties that he was considering giving an *Allen* charge. *See Allen v. United States,* 164 U.S. 492, 501–02, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896). After defense objection, however, the judge decided to send a note to the jurors telling them to continue their deliberations.

The jurors deliberated for a few more hours and then sent another note informing the judge that they were still deadlocked. This note did not indicate the split of jurors. At that point, the district judge decided to give an *Allen* charge.[1] On the next day of deliberations, the jury requested the re-reading of the testimony of two government witnesses. On the following day of deliberations, the jury returned guilty verdicts on both counts.

In sentencing Ajiboye, the district court imposed a two-level enhancement for abuse of a position of trust under Section 3B1.3 of the Guidelines and sentenced Ajiboye to ten months' imprisonment.

## Discussion

**A.** Ajiboye argues that the district judge's *Allen* charge coerced the jury into returning guilty verdicts. In this circuit, a district judge's *Allen* charge is upheld in all cases except those where it's clear from the record that the charge had an impermissibly "coercive effect" on the jury. *United States v. Wauneka,* 842 F.2d 1083, 1088–89 (9th Cir.1988); *United States v. Beattie,* 613 F.2d 762, 764–66 (9th Cir.), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980).

If a trial judge inquires into the numerical division of the jury and then gives an *Allen* charge, the charge is per se

---

1. He instructed:

Each of you must decide the case for yourself, but you should do so only after considering all the evidence, discussing it fully with the other jurors, and listening to the views of your fellow jurors. Do not be afraid to change your opinion if you think you are wrong. But do not come to a decision simply because other jurors think it is right. There is no reason to think that this case could be better tried or that another jury is better qualified to decide it. It is important therefore that you reach a verdict if you can do so conscientiously. Therefore, if it looks at some point as if you may have difficulty in reaching a unanimous verdict and if the great-er number of you agreed on a verdict, the other jurors may want to ask themselves about the basis for their feelings when a substantial number have reached a different conclusion. You should therefore hesitate to reconsider your views—excuse me. Therefore, you should not hesitate to reconsider your views from time to time and to change them if you are persuaded that this is appropriate. It is important that you attempt to return a verdict but, of course, only if each of you can do so after having made his or her own conscientious determination. Do not surrender an honest conviction as to the weight and effect of the evidence simply to reach a verdict.

coercive and requires reversal. *Brasfield v. United States*, 272 U.S. 448, 450, 47 S.Ct. 135, 136, 71 L.Ed. 345 (1926); *United States v. Sae–Chua*, 725 F.2d 530, 532 (9th Cir.1984); *United States v. Seawell*, 550 F.2d 1159, 1162 n. 7 (9th Cir.1977). Even when the judge does not inquire but is inadvertently told of the jury's division, reversal is necessary if the holdout jurors could interpret the charge as directed specifically at them—that is, if the judge knew which jurors were the holdouts *and* each holdout juror knew that the judge knew he was a holdout. *See Sae–Chua*, 725 F.2d at 532; *Seawell*, 550 F.2d at 1162 n. 7.

*Sae–Chua* is a good example. There, on the second day of deliberations, the jury foreperson sent a note to the judge indicating that eleven jurors were in favor of conviction but that one juror, while expressing the view that he believed the defendant was guilty, persisted in voting not guilty. The judge brought the jurors into the courtroom and polled them as to whether they believed further deliberations could result in a verdict. All but one of the jurors believed a verdict could be reached. The judge gave an *Allen* charge, and after several more hours of deliberation, the jury returned a guilty verdict.

We noted that the rational inference was that the one juror who did not believe a verdict could be reached was the one who persisted in voting not guilty. Thus, the district judge was aware of the identity of the sole dissenter, and the dissenter was aware the judge had this knowledge. "Under these circumstances the charge could only be read by the dissenting juror as being leveled at him.... [T]he giving of the charge under these circumstances was coercive and constituted reversible error." 725 F.2d at 532.

Here, by contrast, there was a 9–3 split to convict on one count and a 9–3 split to acquit on the other. Unlike *Sae–Chua*, the judge did not know the identity of the holdouts on either count; there is thus no way that any of the holdout jurors could

have thought the judge was directing the instruction specifically at him. We therefore cannot conclude solely on the basis of the judge's knowledge of the jury's split that the verdicts were impermissibly coerced by the *Allen* charge.

Furthermore, none of the other indications of an impermissibly coercive *Allen* charge is present here. *See Wauneka*, 842 F.2d at 1088. The trial judge gave the charge only once. *See Seawell*, 550 F.2d at 1163. The jury did not return the guilty verdicts immediately after the *Allen* charge; instead, the jury deliberated for two additional days following the charge. *See United States v. Bonam*, 772 F.2d 1449, 1451 (9th Cir.1985); *Beattie*, 613 F.2d at 765–66. Indeed, the jury asked for some of the trial testimony to be re-read before reaching its verdict—another pretty good indication that the *Allen* charge did not coerce the guilty verdicts. (Not to mention, on the one count where the jury's split was 9–3 to acquit, the jury actually should have acquitted Ajiboye if the charge had been truly coercive.) Furthermore, the judge, after asking the jurors to be open to other views, told them not to "surrender an honest conviction as to the weight and effect of the evidence simply to reach a verdict." A reminder such as this supports the conclusion that the *Allen* charge was not impermissibly coercive. *See Bonam*, 772 F.2d at 1451.

As no other factors in the record suggest that the jury was impermissibly coerced into returning the two guilty verdicts, we affirm the conviction.

 **B.** Section 3B1.3 of the Sentencing Guidelines mandates a two-level increase in the defendant's base offense level "[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense." [2] The Commentary states:

> The position of trust must have contributed in some substantial way to facilitating the crime and not merely have pro-

---

**2.** Ajiboye's sentencing occurred in June 1991. Because no ex post facto problems are created by following the Guidelines in effect at that time, we apply the version of the Guidelines which became effective November 1, 1990.

vided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller.

"[T]he primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong." *United States v. Hill*, 915 F.2d 502, 506 (9th Cir.1990); *see also United States v. Pascucci*, 943 F.2d 1032, 1037 (9th Cir.1991); *United States v. Foreman*, 926 F.2d 792, 795–97 (9th Cir.1990). Only where an attempt to abuse the relationship by one party could not be "simply or readily noticed by the second party" is there a trust relationship. *Hill*, 915 F.2d at 506. Two indicia of such a position are "the inability of the trustor objectively and expediently to determine the trustee's honesty" and "the ease with which the trustee's activities can be observed." *Id.* (footnote omitted).[3]

Applying these principles here, it is evident that a postal carrier who delivers ordinary mail is in a position of trust. Millions drop mail in mailboxes every day trusting that the Postal Service will safely deliver it to the designated destination. The Postal Service places corresponding faith in those it hires to carry and deliver the mail. The Service does not routinely spy or check up on its carriers as they swiftly complete their appointed rounds. The Service does not register every piece of ordinary mail to ensure that it reaches its intended destination. Instead, it trusts carriers to resist the temptation to appropriate the contents of items of mail for themselves. Unlike the bank teller who is dutifully watched over by supervisors and who must account for all transactions at the end of the day, the postal carrier is free from surveillance when delivering mail and does not account

in any way for particular pieces of ordinary mail. In sum, a Postal Service employee who delivers ordinary mail is in a quintessential position of trust. The district court did not err, therefore, in imposing a two-level enhancement for abuse of a position of trust in calculating Ajiboye's sentence.[4]

### Conclusion

We AFFIRM Ajiboye's conviction and sentence.

---

3. In *Hill*, we held that a long-distance truck driver whose theft of cargo could not readily be ascertained by the recipients was in a position of trust.

4. Under Section 3B1.3, the two-level adjustment for abuse of a position of trust "may not be employed if an abuse of trust or skill is included in the base offense level or specific offense

characteristic." Ajiboye was assigned a base offense level of 4 under Section 2B1.1(b)(1) ("Larceny, Embezzlement, and Other Forms of Theft"). This provision of the Guidelines does not include "an abuse of trust or skill" in it. Ajiboye's two-level enhancement for abuse of a position of trust thus cannot be attacked on that basis.