983 F.2d 1079
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Reid RODGER, Defendant-Appellant.
 No. 92-10324.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 17, 1992.*
Decided Jan. 4, 1993.
 
 Before HUG, PREGERSON and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 On March 31, 1992, defendant Reid Lee Rodger pleaded guilty to and was convicted of one count of mail fraud in violation of 18 U.S.C. § 1341. The defendant filed a timely notice of appeal on April 2, 1992. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We affirm.
 
 BACKGROUND
 
 3
 The defendant was employed as President and Chief Executive Officer of Rodger and Sparks, Inc., a futures commission merchant in Sacramento, California. Rodger and Sparks, Inc., managed trading accounts for its customers and acted as a broker in the purchase and sale of commodities.
 
 
 4
 During late 1988 and early 1989, the defendant made various investment decisions that led to significant customer losses. To disguise and pay off some of these losses, the defendant appropriated $241,200 that he had been directed by a customer, Bashier Shabah, to invest in gold and silver quantities. The defendant disguised this misuse by issuing false monthly statements.
 
 
 5
 Subsequently, Shabah demanded repayment. To repay Shabah, the defendant appropriated $88,000 of $100,000 belonging to Gene and Betty Bell that he had been directed to invest for one year in treasury bills with a 15% rate of return. The defendant disguised this misuse by issuing false quarterly statements. The defendant also used the monies of customers Richard Dove and Michael McGinn to make payments to Shabah and disguised this misuse by issuing false account statements.
 
 
 6
 When the total amount came due to the Bells, the defendant again was required to misuse customer monies to pay his debts. To make an initial payment to the Bells, the defendant appropriated $50,000 that Betty McGinn had directed the defendant to invest in treasury bills. At the time Mrs. McGinn opened her account, she had provided the defendant's firm with information that detailed her May 26, 1909, birthdate and that indicated she had an annual income below $20,000.
 
 
 7
 The grand jury returned an eighteen count indictment against the defendant charging him with fifteen counts of mail fraud and three counts of wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. A superseding information then was filed charging the defendant with a single count of mail fraud in violation of 18 U.S.C. § 1341. The superseding information charged the defendant with devising a scheme to obtain approximately $225,000 from Gene and Betty Bell, Richard Dove, Michael McGinn, and Betty McGinn through false representations. The defendant pleaded guilty to the one count information pursuant to a written plea agreement.
 
 
 8
 The presentence report recommended that the defendant receive a two level upward adjustment to his sentence for a vulnerable victim pursuant to U.S.S.G. § 3A1.1 and a two level upward adjustment to his sentence for abuse of a position of trust or use of a special skill pursuant to U.S.S.G. § 3B1.3. The district court adopted these recommendations, and the defendant appeals.
 
 DISCUSSION
 A. Standard of Review
 
 9
 We review the district court's application of the Sentencing Guidelines de novo. United States v. Caterino, 957 F.2d 681, 683 (9th Cir.), cert. denied, 113 S.Ct. 129 (1992); United States v. Howard, 894 F.2d 1085, 1087 (9th Cir.1990). We accord "due deference" to the district court's application of the Sentencing Guidelines to the facts and review findings of fact only for clear error. Id.
 
 B. Merits
 
 10
 Section 3A1.1 of the Sentencing Guidelines mandates that:
 
 
 11
 If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.
 
 
 12
 United States Sentencing Commission, Guidelines Manual, § 3A1.1 (Nov. 1991). We find no error with the application of § 3A1.1 in this case.
 
 
 13
 We must give due deference to the district court's determination that Mrs. McGinn was a vulnerable victim. See Caterino, 957 F.2d at 683 ("The district court's finding that two of Marco's victims were 'vulnerable' is not clearly erroneous."); United States v. Rocha, 916 F.2d 219, 244 (5th Cir.1990) ("The determination as to vulnerability is a factual finding which the district court is in the best position to gauge since the district court has had the opportunity to observe the victim in court."), cert. denied, --- U.S. ----, 111 S.Ct. 2057 (1991); United States v. White, 903 F.2d 457, 463 (7th Cir.1990) (same). According due deference to the district court, we have no quarrel with its finding that Mrs. McGinn, an 82 year old woman who was financially vulnerable and defrauded out of her life savings, was vulnerable within the meaning of § 3A1.1.
 
 
 14
 Similarly, we must give due deference to the district court's conclusion that the defendant knew or should have known of Mrs. McGinn's vulnerability. See, e.g., Rocha, 916 F.2d at 244 ("[T]he district court's determination of the victim's vulnerability is entitled to due deference, as is the district court's determination of what the defendant knew or should have known."). At the time the defendant undertook his scheme, his firm had within its possession information detailing both the age and the financial vulnerability of Mrs. McGinn. Therefore, we have no quarrel with the district court's conclusion that the defendant knew or should have known of Mrs. McGinn's vulnerability. The district court properly applied § 3A1.1 to adjust upward defendant's offense level by two.
 
 
 15
 Section 3B1.3 of the Sentencing Guidelines mandates that:
 
 
 16
 If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.
 
 
 17
 U.S.S.G. § 3B1.3. We find no error with the application of § 3B1.3 in this case.
 
 
 18
 In defining a position of trust, this court has stated:
 
 
 19
 [T]he primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong.... [I]f one party is able to take criminal advantage of the relationship without fear of ready or quick notice by the second party, the second party has clearly placed a level of trust in the first.
 
 
 20
 United States v. Hill, 915 F.2d 502, 504 (9th Cir.1990). In determining whether particular conduct constituted a breach or an abuse of a position of trust, we must look to whether the defendant exploited the trust relationship to facilitate the offense. Hill, 915 F.2d at 505.
 
 
 21
 Based on the facts of this case, we have little difficulty agreeing with the district court's conclusion that the defendant was in a position of trust with respect to his clients and that his abuse of that position of trust substantially facilitated his crime. His position as a commodities broker not only allowed him access to large amounts of his customers' monies that he appropriated and misused, but also made it possible to conceal his fraud by issuing false account statements. In other words, his abuse of a position of trust facilitated his fraud in a manner not accounted for in the underlying offense.
 
 
 22
 Moreover, application Note 2 to § 3B1.3 states that " 'special skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training, or licensing." U.S.S.G. § 3B1.3, comment (n. 2). Undoubtedly, the defendant, an SEC licensed commodities broker, possessed and used such special skill.
 
 
 23
 Defendant nevertheless proffers three theories as to why § 3B1.3 should not be applied in his case. First, he argues that the seven-page, twenty-two paragraph information defining his underlying offense takes into account his abuse of a position of trust and use of a special skill, and that § 3B1.3 is therefore inapplicable by its own terms: "This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." U.S.S.G. § 3B1.3. Section 3B1.3, however, directs our attention to the base offense level or specific offense characteristic provisions of the Sentencing Guidelines, not the information to which the defendant pleaded guilty. Because neither the applicable base offense level provision, U.S.S.G. § 2F1.1(a), nor the applicable specific offense characteristic provision, U.S.S.G. § 2F1.1(b)(1)(H), include an abuse of trust or skill, the defendant's first argument fails.
 
 
 24
 Second, the defendant argues that no facts support an upward adjustment for an abuse of a position of trust or use of a special skill because his base offense includes only his dealings with the Bells. The defendant specifically argues that rejection of his first argument above necessarily means that his underlying offense is limited only to his dealings with the Bells and that the record does not show that he ever handled large amounts of money for the Bells, that the Bells ever invested with him, or that he ever used his commodities business in any way when dealing with the Bells. First, we reject his argument that his underlying offense is limited to his dealings with the Bells. Defendant's underlying offense is determined by reference to the information to which he pleaded guilty, which included his dealings with all five victims. That the relevant base offense level provision in the Sentencing Guidelines does not include abuse of trust or skill has no bearing on how the underlying offense is determined. Second, the record simply does not support the defendant's arguments. According to the record, the Bells sent the defendant $100,000 with direction to invest that money for one year in treasury bills with a guaranteed rate of return of 15%. The defendant failed to do so, used the Bells' money to pay debts owed another customer, and then disguised his misuse of the Bells' money with false account statements. Much more than mere borrowing, as defendant alleges, his dealings with the Bells involved an abuse of a position of trust and use of a special skill. The defendant's second argument also fails.
 
 
 25
 Third, the defendant contends that if his base offense level is determined by his dealings with all five victims listed in the information, then his specific offense characteristic, § 2F1.1(b)(1)(H), includes abuse of trust or skill and is not allowed to be considered again. We fail to see the logic of the defendant's argument. Section 2F1.1(b)(1)(H) simply deals with the amount of loss created by the defendant's conduct, not what the conduct itself involved. As such, it does not include either abuse of trust or skill. The defendant's third argument also fails, and the district court properly applied § 3B1.3 to adjust upward defendant's offense level by two.
 
 CONCLUSION
 
 26
 Accordingly, the defendant's sentence is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3