995 F.2d 233
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Travis James DEARBORN, Defendant-Appellant.
 No. 92-30412.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 25, 1993.*
Decided June 1, 1993.
 
 Before: HUG, WIGGINS and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Travis James Dearborn appeals his sentence, imposed under the United States Sentencing Guidelines ("Guidelines"), following his plea of guilty to using an unauthorized automatic teller machine (ATM) card. Dearborn claims the district court erred by concluding that he had abused a position of trust to facilitate the offense, and adjusting his base offense level upward two points in accordance with U.S.S.G. § 3B1.3. Dearborn argues that the commentary to U.S.S.G. 3B1.3 exempts him from such an adjustment because he is a mere bank teller. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 We review de novo the district court's conclusion that Dearborn abused a position of trust to facilitate the offense. United States v. Hill, 915 F.2d 502, 505 (9th Cir.1990). The Guidelines authorize enhanced penalties for defendants who "abuse[ ] a position of public or private trust ... in a manner that significantly facilitate[s] the commission or concealment of the offense." U.S.S.G. § 3B1.3. Application Note 1, discussing that guideline provision, states:
 
 
 4
 The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller.
 
 
 5
 U.S.S.G. § 3B1.3, comment. (n. 1). "[T]he primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong.... [I]f one party is able to take criminal advantage of the relationship without fear of ready or quick notice by the second party, the second party has clearly placed a level of trust in the first." Hill, 915 F.2d at 506. We have upheld application of the enhancement to a postal clerk because "[u]nlike the bank teller who is dutifully watched over by supervisors and who must account for all transactions at the end of the day, the postal carrier is free from surveillance when delivering mail and does not account in any way for particular pieces of ordinary mail." United States v. Ajiboye, 961 F.2d 892, 895 (9th Cir.1992). See also United States v. Mulligan, 958 F.2d 345 (11th Cir.1992) (infrequent monitoring distinguishes postal clerk from bank teller).
 
 
 6
 Here, Dearborn and three friends were convicted of using a fraudulent ATM card to withdraw $33,000 from the First Interstate Bank of Oregon ("FIBO") in a series of 64 transactions between February 14 and 19, 1992. The crime was discovered when the bank detected excessive ATM activity on the bank account of Fred Trullinger. Further investigation revealed that change of address, bank card and personal identification number orders had been processed on Trullinger's account shortly before the ATM transactions occurred. The bank contacted Trullinger and learned that he had not requested the changes nor made the ATM withdrawals.
 
 
 7
 At the sentencing hearing, Dearborn testified that he had worked at FIBO as a teller until June of 1991, when he was promoted to the position of "personal banker." Personal bankers at FIBO are responsible for initiating changes in existing accounts, among other things. At the time of his promotion, he received additional training in opening accounts, computer operations, time deposits and general banking operations. He admitted that he had contrived the scheme to get cash and used his computer at the bank to locate an account with a large available balance. Then, he submitted a change of address order on the account and reordered an ATM card on the account, changing the personal identification number necessary to use it. Finally, he deleted an invalid address code that appeared in the bank's records when mail to the false address had been returned to the bank as undeliverable. He acknowledged that most of these functions were not ordinarily performed by tellers.
 
 
 8
 In light of these facts, we conclude the district court properly applied the abuse of trust adjustment in sentencing Dearborn. First, although he argues on appeal that he was a bank teller at the time of the offense, Dearborn's own testimony shows that, in fact, he had been promoted from the position of teller six months before he initiated the crime. Second, we have explained that the Guidelines exempt tellers from the enhanced penalties authorized by § 3B1.3 authorizes because tellers are too closely watched to be considered to hold positions of trust. Tellers "must account for all transactions at the end of the day." Ajiboye, 961 F.2d at 895. By contrast, Dearborn used his computer access and expertise as a personal banker to execute and conceal a rather elaborate scheme. His crime was not detected through the kind of predictable audit to which tellers are subject. Rather, he drew attention to himself by making 64 ATM withdrawals of $500 each in the space of four days. The district court correctly concluded that he abused a position of trust to facilitate this crime. See Hill, 915 F.2d at 505.
 
 
 9
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3