36 F.3d 1104
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
George Jeffrey THORNTON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael L. VERKER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Albert DeSILVA, Defendant-Appellant.
 Nos. 93-10660, 93-10669 and 93-10737.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 8, 1994.
Decided Sept. 1, 1994.
 
 Before: NORRIS, THOMPSON, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 George Thornton, Michael Verker, and Albert DeSilva appeal their jury convictions and sentences for conspiracy and interstate transportation of stolen property. 18 U.S.C. Secs. 371, 2314.
 
 
 3
 * We first address Thornton's and DeSilva's claim that the district court committed reversible error when it refused to include defendants' proposed "no adverse inference" instruction in its final charge to the jury.
 
 
 4
 Failure of the district court to give the requested jury instruction is subject to harmless error analysis. See United States v. Hasting, 461 U.S. 499, 510 (1983) (harmless error analysis applied to improper comment by prosecutor on defendant's silence at trial in violation of the Fifth Amendment Self-Incrimination Clause); Kentucky v. Whorton, 441 U.S. 786, 789 (1979) (per curiam) (harmless error analysis applied to trial court's failure to give requested "presumption of innocence" jury instruction); Chapman v. California, 386 U.S. 18, 24 (1967) (harmless error analysis applied to, inter alia, improper jury charge allowing adverse inference to be drawn from defendant's failure to testify). In order to sustain the convictions, the Government must prove beyond a reasonable doubt that the error was harmless. Chapman, 386 U.S. at 24. In applying harmless error analysis, we look at "the totality of the circumstances--including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors...." Whorton, 441 U.S. at 789.
 
 
 5
 We assume, without deciding, that the district court erred in failing to give the requested "no adverse inference" jury charge and hold that the error was harmless beyond a reasonable doubt. The district court instructed the jury twice during voir dire and once after the impanelling process that "the law prohibits you from arriving at your verdict from considering that the defendants may not have testified." RT 5/19/93 at 71-72, 111-12, 180-81. In addition, the final jury charge instructed that "defendants are presumed innocent and do not have to testify or present any evidence to prove innocence." RT 6/1/93 at 53. These instructions, coupled with the evidence presented against Thornton and DeSilva at trial, render the district court's failure to instruct on "no adverse inference," if error, harmless beyond a reasonable doubt.
 
 II
 
 6
 Thornton argues that the district court erred in increasing his base offense level for abuse of a position of trust. Thornton contends that he did not occupy a position of trust with respect to the owners of the stolen VCRs, and that, even if he did occupy such a position, he did not use it to "significantly facilitate the commission or concealment of the offense" as required by the Sentencing Guidelines. U.S.S.G. Sec. 3B1.3. We disagree.
 
 
 7
 In United States v. Hill, 915 F.2d 502 (9th Cir.1990), we stated that the "primary trait" of a person in a position of trust is the "freedom to commit a difficult-to-detect wrong." 915 F.2d at 506. Two indicia of this trait are (1) "the inability of the trustor objectively and expediently to determine the trustee's honesty," and (2) "the ease with which the trustee's activities can be observed." Id. We also noted that "a position of trust, if any, must be established from the perspective of the victim." Id. at 506 n. 3.
 
 
 8
 Thornton's position as warehouse foreman unquestionably gave him the "freedom to commit a difficult to detect wrong." Thornton had his own personal keys to the yard and the trailer; he signed the Bills of Lading for the trailer; he supervised others at the yard; and he had the knowledge and authority to arrange the VCRs and the trailers in a way that concealed the thefts. Moreover, these facts also support the conclusion that Thornton used his position to "significantly facilitate" the commission of the crime.
 
 
 9
 Thornton argues that he nevertheless was not in a position of trust when examined "from the perspective of the victim." Id. at 506 n. 3. In Hill we noted that "in many instances, a customer of an organization places her or his trust in the organization, and not in the individual server." Id. at 507. Hill provided one example of a trust relationship between an individual server and a customer, id., and the instant case provides another. Thornton's position as a yard foreman, with all the attendant responsibilities and authority, placed him in a position of trust with respect to MSAS' customers.
 
 
 10
 After reviewing de novo the application of the abuse of trust enhancement, id. at 505, we hold that the district court did not err.
 
 III
 
 11
 U.S.S.G. Sec. 3B1.1 allows the district court to increase a defendant's offense by four levels if the defendant was an organizer or leader of a crime that involved five or more participants or was otherwise extensive. Thornton and DeSilva point out that to be an organizer or leader one must supervise at least one responsible participant. United States v. Helmy, 951 F.2d 988, 997 (9th Cir.1991); United States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir.1990). Both argue that they did not exercise the requisite control over any participant.
 
 
 12
 We review a district court's finding that a defendant is an organizer or a leader for clear error. United States v. Monroe, 943 F.2d 1007, 1019 (9th Cir.1991). At trial it was established that Thornton informed Taylor about the VCR's and his plan to steal them; Thornton contacted DeSilva, and then informed Taylor that he had found a buyer in the East and what night they would steal the VCRs; Thornton instructed Taylor to drill out a lock and collect shavings; and Thornton received $14,000 of which he paid Taylor $1,000 and DeSilva $5,000. As for DeSilva, evidence was introduced at trial that DeSilva brought Thornton and Verker together and selected his son-in-law to transport the stolen VCRs. These facts support the enhancements and thus the district court did not clearly err.
 
 IV
 
 13
 Verker[1] contends that he was denied a fair trial because the judge acted as an advocate for the prosecution. Verker bases this claim on the judge's suggestions and instructions to the prosecutor; the judge's questioning of Verker on the stand; and the judge's refusal to allow re-direct examination of Verker.
 
 
 14
 "A judge's participation justifies a new trial only if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality." United States v. Laurins, 857 F.2d 529, 537 (9th Cir.1988). We review a district court's denial of a motion for a mistrial under the abuse of discretion standard. United States v. Homick, 964 F.2d 899, 906 (9th Cir.1992).
 
 
 15
 The judge's actions here do not constitute an abuse of discretion. A judge is "more than an umpire, and may participate in the examination of witnesses to clarify evidence...." Id. at 537. The judge's questions, suggestions, and restrictions on re-direct were legitimate efforts to effectively and fairly manage the trial. Moreover, the judge gave the following instruction to the jury:
 
 
 16
 Your verdict must be based solely on the evidence and on the law as I have given it to you in these instructions. However, nothing I have said or done is intended to suggest what your verdict should be--that is entirely for you to decide."
 
 
 17
 ER 15.
 
 
 18
 This instruction weighs against any semblance of partiality. See Laurins, 857 F.2d at 538 (noting role of jury instructions in alleviating possible appearance of impartiality); Kennedy v. L.A. Police Dep't, 901 F.2d 702, 710 (9th Cir.1989) (same).
 
 V
 
 19
 DeSilva claims that the prosecutor improperly exercised two peremptory challenges to strike a black male and a Libertarian Party member, in violation of Batson v. Kentucky, 476 U.S. 79 (1986). The prosecutor stated he struck the two jurors because the black male felt his brother had been unjustly convicted of a crime, and the Libertarian had a family member who had been convicted of a crime. The trial court accepted the prosecutor's explanations and excused both jurors.
 
 
 20
 With regard to the Libertarian, DeSilva has not even established a prima facie case of purposeful discrimination as required by Batson. Id. at 96. With regard to the black male, DeSilva has failed to discredit the prosecutor's racially-neutral explanation. The district court's evaluation of the prosecutor's explanations is entitled to great deference, Batson, 476 U.S. at 98; see also 28 U.S.C. Sec. 2254(d); Hernandez v. New York, 111 S.Ct. 1859, 1868 (1991), and we see no basis for reversing.
 
 VI
 
 21
 DeSilva argues that the district court erred in refusing to admit into evidence Reagan Taylor's divorce decree because the decree served to attack Taylor's credibility. DeSilva did not proffer a reason for admitting this evidence at trial. The Government correctly points out that the decree is wholly consistent with Taylor's testimony at trial and therefore could not have been used to attack his credibility.
 
 
 22
 If a party fails to state the specific grounds upon which evidence is admissible, we review the district court's refusal to admit that evidence for plain error. United States v. Muniz, 684 F.2d 634, 640 (9th Cir.1982). Refusal to admit the divorce decree was clearly not plain error given the decree did not draw into question Taylor's credibility.
 
 VII
 
 23
 DeSilva contends that the district court should not have allowed Detective Haduch to testify on rebuttal as to the origins of stolen VCR units recovered in Arizona because no defendant presented evidence on this issue. The Government responds by arguing that Detective Haduch's testimony rebutted the cross examination testimony of the Government's cooperating witness, Reagan Taylor.
 
 
 24
 A trial court has broad discretion to admit or exclude rebuttal evidence. United States v. McCollum, 732 F.2d 1419, 1426 (9th Cir.1984). The standard of review on appeal is abuse of discretion. United States v. Steel, 759 F.2d 706, 712 (9th Cir.1985). Furthermore, "[a] nonconstitutional evidentiary error will be reversed for an abuse of discretion only if the court's ruling more likely than not affected the verdict." United States v. Chu Kong Yin, 935 F.2d 990, 994 (9th Cir.1991).
 
 
 25
 Given the limited scope of Detective Haduch's testimony, and the totality of the evidence presented at trial, we see no reason for reversing the district court's decision.
 
 VIII
 
 26
 DeSilva argues that there was insufficient evidence to support his conviction for conspiracy and interstate transportation of stolen property. Sufficient evidence supports a conviction if "reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992).
 
 
 27
 The following evidence adduced at trial supports DeSilva's conviction:
 
 
 28
 . Taylor identified DeSilva as being present when the trailer full of 760 VCRs was stolen from MSAS's yard and when the VCRs were loaded onto the rental truck.
 
 
 29
 . DeSilva brought Verker and Thornton together.
 
 
 30
 . When Verker arrived in Phoenix, DeSilva telephoned Thornton from Verker's hotel room.
 
 
 31
 . DeSilva selected his son-in-law to drive the rental truck with the stolen VCRs back to Philadelphia.
 
 
 32
 . Numerous phone calls were made between DeSilva and Verker during the relevant time periods.
 
 
 33
 . A telephone call from DeSilva's residence was made to Watson's rented hotel room where the stolen VCR's were located.
 
 IX
 
 34
 DeSilva argues that the district court erred in increasing his offense level for more than minimal planning pursuant to U.S.S.G. Sec. 2B1.2(b)(4)(B). "More than minimal planning is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." U.S.S.G. Sec. 1B1.1, comment (n. 1(f)).
 
 
 35
 The evidence shows that DeSilva brought Verker and Thornton together, selected Watson to drive the truck, met Thornton and Taylor at the MSAS yard, stole a trailer, and unloaded the VCRs onto a rental truck. Based on the evidence, the district court did not err in enhancing DeSilva's sentence for more than minimal planning.
 
 X
 
 36
 DeSilva argues that the district court erred when it valued the loss in excess of $350,000, thereby increasing his base level by one over the lower $200,000--$350,000 range. U.S.S.G. Sec. 2B1.1(b)(1)(K), (L). DeSilva argues that the value should be calculated according to the actual loss suffered by Go-Video, estimated at $338,884, and not the fair market value of the stolen VCRs. We disagree.
 
 
 37
 The Sentencing Guidelines and our caselaw make clear that fair market value is the appropriate mode of valuation here. See United States v. Mullins, 992 F.2d 1472, 1479 (9th Cir.1993); U.S.S.G. Sec. 2B1.1. DeSilva concedes that in determining fair market value the court need not do so with precision and may rely on any reasonable evidence. Mullins, 992 F.2d at 1479. An affidavit from the CFO of Go-Video valued the VCR units at $567.52 each, or $431,315.20 for 760 units, well within the $350,000--$500,000 range.
 
 
 38
 We review a district court's factual findings regarding sentences for clear error. United States v. Chapnick, 963 F.2d 221, 226 (9th Cir.1992). Based on the affidavit from Go-Video's CFO, the district court did not clearly err in valuing the loss in excess of $350,000.
 
 
 39
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 DeSilva incorporates by reference this argument and contends that because "Verker and [DeSilva] were so intertwined," DeSilva also did not receive a fair trial. DeSilva Br. at 14