UNITED STATES of America, Plaintiff–Appellee,

v.

Lena WILLIAMS, Defendant–Appellant.

No. 92–6013.

United States Court of Appeals, Sixth Circuit.

Argued March 19, 1993.

Decided May 5, 1993.

---

**3.** *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 365, 97 S.Ct. 1843, 1870, 52 L.Ed.2d 396 (1977) ("If an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs"); *Tagupa v. Board of Directors,* 633 F.2d 1309, 1311–12 (9th Cir.1980) (incomplete application does not destroy standing; however, it does defeat section 1981 claim on the merits, where it was rejected for incompleteness and not for avowedly discriminatory reason);

*Planned Parenthood Association of Chicago v. Kempiners,* 700 F.2d 1115, 1137 (7th Cir.1983) (concurring opinion of Posner, "If a public university had a policy of not admitting any blacks to its medical school, a black would not lack standing to challenge the constitutionality of the policy merely because he might not be admitted if the policy were abandoned ... But he would not have standing if he was two years old") (this case was remanded for further proof on the issue of standing) *Northeastern Florida Chapter of the Associated General Contractors of America,* slip op. cite.

Joseph M. Whittle, U.S. Atty., E. Brian Davis, Asst. U.S. Atty. (argued and briefed), Louisville, KY, for plaintiff-appellee.

Jeffrey H. Hoover, Jamestown, KY (argued and briefed), for defendant-appellant.

Before: MILBURN and RYAN, Circuit Judges; and COFFIN,* Senior Circuit Judge.

RYAN, Circuit Judge.

Defendant Lena Williams appeals her sentence for embezzling and misapplying funds while an employee of the Agricultural Stabilization and Conservation Service, in violation of 15 U.S.C. § 714m(b). Williams raises two issues on appeal: 1) whether the district court properly considered the probation office's revisions to the presentence report; and 2) whether the district court clearly erred when it increased Williams's offense level for abuse of a position of trust.

Because we conclude that the district court clearly erred when it increased Williams's offense level, we shall vacate the sentencing order and remand for resentencing.

## I.

Williams began working for the United States Department of Agriculture at the Agricultural Stabilization and Conservation Service in Russell County, Kentucky, in 1962, and was promoted to executive director in October 1989. From January 1989 to March 1991, Williams embezzled funds totaling $24,-733 from disaster and feed grain program funds. The disaster and feed grain programs were instituted to compensate farmers for crop losses from natural disasters. By using false information and the forged signatures of Russell County residents on required service forms, Williams created fictitious farm records to falsely show that farmers had applied to receive payments from the program funds. The fictitious files supported the issuance of checks, which were made out to Williams rather than to the farmers. On July 23, 1991, a district director for the service discovered Williams's activi-

*The Honorable Frank M. Coffin, Senior Circuit Judge of the United States Court of Appeals for the First Circuit, sitting by designation.

ties when he accessed the service's computer system and noticed that Williams had been issued several checks. His discovery eventually led to an investigation that revealed Williams's illegal activities. After federal authorities confronted Williams about her embezzlement activities, she pled guilty to a one-count information charging her with violating 15 U.S.C. § 714m(b).

Sentencing was set for May 6, 1992. On February 14, 1992, the district court entered an order setting forth its procedures for complying with the federal guideline sentencing rules. The court's procedures required the probation office to disclose the presentence report to Williams and her counsel not less than twenty days prior to sentencing, and both parties to submit to the probation office any objections to the presentence report within ten days after the report was disclosed. The district court's order stated that these time limits would be strictly enforced and that the court would not consider untimely objections. The order also provided:

> Prior to the date of the sentencing hearing, the probation officer shall submit the presentence report to the sentencing judge. The report shall be accompanied by an addendum setting forth any objections counsel may have made that have not been resolved, together with the officer's comments thereon. The probation officer shall certify that the contents of the report, including any revisions thereof, have been disclosed to the defendant and to counsel for the defendant and the government, that the content of the addendum has been communicated to counsel, and that the addendum fairly states any remaining objections.

Williams and her counsel received the presentence report on April 17, 1992. The report recommended a base offense level of 10, which included a two-point decrease for acceptance of responsibility but, notably, no increase for abuse of a position of trust. The offense level of 10 provided a 6–12 month sentence range, which would have made Williams eligible for probation. Neither party filed any objections to the report. On Tuesday, April 28, 1992, eight days prior to sentencing, the probation office notified Williams that it planned to revise the presentence report to recommend a two-point increase in the offense level for abuse of a position of trust as required by U.S.S.G. § 3B1.3. This increased Williams's offense level to 12 and required a sentence range of 10–16 months, meaning that Williams was no longer eligible for probation. Williams filed a motion to continue the sentencing hearing so that she could adequately prepare her objections to the revised presentence report. The district court granted the motion and moved sentencing from May 6 to June 25, 1992. Williams eventually filed her objections, and they were included in the addendum to the presentence report.

During the sentencing hearing, Williams argued that the facts did not support a finding that she abused a position of trust. She also argued that the court should not have permitted the probation office to revise the report only eight days before the scheduled sentencing date because the revision occurred outside the time limits set forth in the court's procedural order. The court rejected Williams's argument that the revisions were untimely. Finding that the facts warranted enhancing the offense level for abuse of a position of trust, the district court sentenced Williams to five months imprisonment, five months home detention, and three years supervised release. The court also ordered Williams to pay restitution.

## II.

### A.

 Williams argues that the district court should not have considered the probation office's revisions to the presentence report, which included the enhancement for abuse of a position of trust, because the probation office did not disclose the changes to Williams until eight days before the scheduled sentencing hearing date. She claims that this violated the district court's own procedural order. The government responds that the order sets a time limit for filing the presentence report, but the only time limit for submitting revisions is the provision requiring that the probation office submit revisions to the court and to the defendant prior to sentencing; therefore, the order was not violated. Furthermore, the government ar-

gues, even if the revised presentence report was a technical violation of the court's procedural order, Williams did not suffer harm or prejudice because it was within the court's discretion to postpone the sentencing hearing from May 6 to June 25 to allow Williams adequate time to respond to the revisions.

As argued by the government, the court's order did not establish a time limit in which the probation office had to submit revisions to the presentence report. Section (a) of the order provides time limits for disclosing the presentence report and counsels' objections. Section (c) discusses revisions to the report and requires that they be disclosed to the court and defendant prior to sentencing. The probation office complied with the court's order when it submitted its revisions prior to sentencing.

More importantly, Williams fails to specify what cognizable harm she suffered as a result of the revisions. Williams does not claim, nor could she, that the court denied her a fair opportunity to review the report or to file her objections. At her request, the court continued the sentencing hearing for several weeks so that Williams's counsel had adequate time to respond to the revisions. Williams also does not claim that the court failed to comply with the sentencing procedures required by Fed.R.Crim.P. 32. Finally, Williams does not allege any due process violation; she neither raises "grave doubt" as to the veracity of the information contained in the presentence report, nor does she show that the court relied on false information as a basis for the resulting sentence. *See United States v. Stevens,* 851 F.2d 140, 143 (6th Cir.1988). Williams's first assignment of error is, therefore, without merit.

### B.

■ In her second assignment of error, Williams argues that the government failed to show that her position with the service "significantly" contributed to the commission of the crime.[1] According to Williams, although she held a position of trust for the service as its executive director, her position did not contribute in a substantial way to the facilitation or the concealment of the embezzlement. Other service employees had the same opportunity and could have committed the same offense as easily as did she. She argues that the fact that she successfully embezzled funds before she became an executive director shows that her position as executive director did not contribute to her criminal conduct in a "substantial way," as required by the guidelines.

The government acknowledges that other employees in the service may have had the knowledge and ability to commit the crime; however, as executive director, Williams occupied the unique position of being an essentially "unsupervised supervisor." Absent supervision, Williams could continue her criminal activities with less fear of being apprehended by superiors, and she could keep her activities a secret from other employees.

■ The district court's finding regarding application of section 3B1.3 is a factual finding. *United States v. Fakih,* 944 F.2d 906 (6th Cir.1991) (*citing United States v. Feinman,* 930 F.2d 495, 500 (6th Cir.1991) (involving enhancement provision under section 3B1.1)). This court reviews the sentencing court's factual findings for clear error and gives due deference to the court's application of the guidelines. *See* 18 U.S.C. § 3742(d); *see also United States v. Walton,* 908 F.2d 1289, 1300–01 (6th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990).

The guidelines provide, in part:

If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase [the offense level] by 2 levels.

U.S.S.G. § 3B1.3. For the increase to apply, "[t]he position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could easily have been afforded to other persons. This adjustment, for

---

1. At the sentencing hearing, Williams also argued that § 3B1.3 should not have applied because embezzlement necessarily involves abuse of a position of trust and, therefore, the abuse is already considered in the base offense level. She fails to raise this argument in her brief and, therefore, has abandoned it on appeal. *See Boyd v. Ford Motor Co.,* 948 F.2d 283, 284 (6th Cir. 1991), *cert. denied,* — U.S. —, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992).

example, would not apply to an embezzlement by an ordinary bank teller." U.S.S.G. § 3B1.3, comment. (n.1).

The district court rejected Williams's claim that her position as executive director did not help her commit the offense. Instead, the court adopted the presentence report's finding that enhancement for abuse of a position of trust was appropriate because Williams's position as executive director significantly facilitated the concealment of the offense, and her position with the service likely helped her continue her criminal conduct.

The record, however, does not show specifically how Williams's position "significantly" contributed to the facilitation of the crime. It is true that Williams was a trusted employee and supervisor of the entire office, and that she used her position to commit and conceal her actions. But the guidelines require the government to show that William's position did not merely provide an opportunity that could easily have been afforded to other persons. *See* U.S.S.G. § 3B1.3, comment. (n. 1). Williams created fictitious files and issued checks to herself before she became an executive director. Thus, it appears that she was as able to embezzle funds while a "regular" employee as she was as an executive director. It is quite possible that, as executive director, Williams may have more easily continued her criminal activity without fear of apprehension by a superior, more so than when she was a "regular" employee. As the service's executive director, Williams was in charge of the Russell County office, and her supervisor was located in Lexington, Kentucky. He did not contact her on a daily basis, and he did not regularly oversee her activities. Nevertheless, in the district court proceedings, no record was developed to establish that her autonomy clearly assisted in the concealment of the crime. Keeping in mind that the government bears the burden of establishing enhancement factors by a preponderance of the evidence, *United States v. Garner*, 940 F.2d 172, 174 (6th Cir.1991), we cannot assume, without adequate evidence, that Williams's position of trust as executive director, and the control and power associated with that position, afforded her more of an opportunity to commit and conceal her criminal activities than was afforded to other persons in the office. Such a conclusion must be supported by specific evidence in the record, and no such evidence exists in the record before us. Consequently, we conclude that the district court clearly erred when it found that section 3B1.3 applied because there is no evidence that Williams's position as executive director substantially helped her commit the crime.

## III.

For the foregoing reasons, we **VACATE** the district court's sentencing order and **REMAND** for resentencing.