23 F.3d 409
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Kevin B. LAYNE, Defendant-Appellant,
William Burton Carroll, Defendant-Appellant.
 Nos. 93-1460, 93-1461.
 United States Court of Appeals, Sixth Circuit.
 April 19, 1994.
 
 Before: NELSON and NORRIS, Circuit Judges, and HEYBURN, District Judge.*
 PER CURIAM.
 
 
 1
 The defendants, one of whom was an employee of the United States Postal Service, were found guilty of offenses arising out of thefts from the U.S. mail. The defendants have appealed both their convictions and their sentences.
 
 
 2
 As to the convictions, one of the defendants contends that the case against him should have been dismissed because it was not brought to trial within the time prescribed by the Speedy Trial Act, 18 U.S.C. Sec. 3161. He also contends that the district court erred in declining to allow a certain learned treatise to be put into evidence. Both defendants argue that the district court erred in admitting certain evidence under the business records exception to the hearsay rule.
 
 
 3
 As to the sentences, both defendants maintain that their guideline offense levels were miscalculated when the district court made an upward adjustment for more than minimal planning. One of the defendants also contends that the court erred in making an upward adjustment for abuse of trust.
 
 
 4
 Finding none of the defendants' contentions persuasive, we shall affirm the district court's disposition of the cases in all respects.
 
 
 5
 * Defendant William B. Carroll worked as a clerk at a United States Post Office in Trenton, Michigan. Over a period of more than a year he apparently stole from the mails at least seven credit cards and about $750 worth of tickets and parking passes for a Detroit Pistons game. The stolen materials were turned over to defendant Kevin Layne, who made fraudulent use of the credit cards and sold the basketball tickets.
 
 
 6
 On August 8, 1991, the United States filed a criminal complaint against Mr. Layne alleging wrongful use of two stolen credit cards. Mr. Layne was arraigned on these charges the following day, but the complaint was dismissed without prejudice on August 27, 1991. A new complaint was filed against Mr. Layne on November 29, 1991. Mr. Layne never appeared in connection with the complaint, and he was not arrested, served with a summons, or taken into custody.
 
 
 7
 On January 16, 1992, a grand jury returned an indictment against both Mr. Layne and Mr. Carroll; Mr. Layne was arraigned on the indictment on January 22, 1992. Pretrial conferences were held for Mr. Layne on January 30, 1992, and for Mr. Carroll on January 28, 1992. Mr. Carroll filed several pretrial motions on February 18, 1992. On May 8, 1992, the district court held a hearing and ruled on Mr. Carroll's motions.
 
 
 8
 The trial was set for May 14, 1992. It did not begin on that date, because Mr. Carroll's attorney was engaged in a lengthy trial elsewhere. On May 22, acting on a motion by the government which stated that the defendants had no objection, the district court dismissed the indictment without prejudice. Contrary to representations made to us in oral argument, no Speedy Trial Act issue was raised at this time. The order of dismissal specifically said that neither defendant had any objection to the dismissal.
 
 
 9
 A superseding indictment was returned against both defendants on August 13, 1992. Mr. Layne was arraigned on September 22, 1992, and had a pretrial conference on September 29. On October 9, 1992, Mr. Layne moved for dismissal on speedy trial grounds. The motion was denied on October 29, 1992, following a hearing. The defendants' trial began on November 16, 1992.
 
 
 10
 The jury found Mr. Layne guilty on two counts of possession of stolen mail in the form of credit cards and guilty on one count of possessing and aiding and abetting the possession of stolen mail in the form of Detroit Pistons tickets. Mr. Carroll was found guilty on one count of aiding and abetting the possession of stolen mail in the form of a credit card and guilty on one count of possessing and aiding and abetting the possession of stolen mail in the form of Detroit Pistons tickets. Each defendant was sentenced to twelve months imprisonment, to be followed by two years supervised release, and each defendant was required to pay restitution in the amount of $1,518.27.
 
 II
 
 11
 Subject to various tolling provisions, the Speedy Trial Act, 18 U.S.C. Sec. 3161, provides that a criminal defendant must be brought to trial within one hundred days from arrest. This requirement is separated into two distinct time segments: thirty days from arrest to indictment, 18 U.S.C. Sec. 3161(b), and seventy days from indictment to trial, 18 U.S.C. Sec. 3161(c)(1). Mr. Layne claims violations of his rights under both Sec. 3161(b) and Sec. 3161(c)(1).
 
 A.
 
 12
 Section 3161(b) provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." Mr. Layne contends that this provision was violated because 161 days elapsed between the filing of the government's complaint on August 8, 1991, and the return of the original indictment on January 16, 1992.[1] The complaint was dismissed without prejudice on August 27, however, and because this occurred within thirty days of Mr. Layne's appearance on the complaint, no violation of the thirty-day requirement occurred. United States v. May, 771 F.2d 980, 982 n. 2 (6th Cir.1985). The time between the filing of the complaint and its dismissal is irrelevant as far as future calculations under Sec. 3161(b) are concerned.
 
 
 13
 The thirty-day "arrest-to-indictment" requirement has no application to the government's subsequent (November 29, 1991) complaint, because Mr. Layne was never arrested, served with a summons, or taken into custody, and he never appeared on the subsequent complaint. "[A] complaint is insufficient, by itself, to trigger the Speedy Trial Act." United States v. Bagster, 915 F.2d 607, 610 (10th Cir.1990) (citing United States v. Bloom, 865 F.2d 485 (2d Cir.), cert. denied, 490 U.S. 1027 (1989), and United States v. Johnson, 815 F.2d 309 (5th Cir.1987), cert. denied, 484 U.S. 1068 (1988)). The "arrested in connection with" language of Sec. 3161(b) requires both a pending federal complaint and a concurring federal arrest. Id. at 611.
 
 B.
 
 14
 Section 3161(c)(1) states, in pertinent part, that:
 
 
 15
 "the trial of a defendant charged in an ... indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."
 
 
 16
 The correct starting date for calculations of time under this section is January 22, 1992, the date of the arraignment on the superseding indictment. In May, 771 F.2d at 982, this court held that, for purposes of Secs. 3161(b) and 3161(c)(1), a prior complaint and arraignment are irrelevant if the prior complaint was dismissed without prejudice. The court stated that a subsequent indictment triggers both the thirty- and seventy-day time periods anew. Id. at 983.
 
 
 17
 Three hundred days elapsed between Mr. Layne's arraignment and his trial. For Speedy Trial Act purposes, however, Sec. 3161(h) designates certain periods of delay as excludable in computing the seventy-day indictment-to-trial period. Section 3161(h)(1) provides that "[a]ny period of delay resulting from other proceedings concerning the defendant" suspends the running of the seventy-day clock. Under this provision, the actual date of Mr. Layne's arraignment (January 22, 1992) is excluded, Richmond, 735 F.2d at 211, as are the dates of his pretrial conferences (January 30 and September 29, 1992), United States v. Mentz, 840 F.2d 315, 326 (6th Cir.1988).
 
 
 18
 Any exclusion involving one defendant applies to all codefendants. See United States v. Holyfield, 802 F.2d 846, 848 (6th Cir.1986), cert. denied, 479 U.S. 1090 (1987). The date of Mr. Carroll's pretrial conference (January 28, 1992) is thus excluded as well.
 
 
 19
 Where an indictment is dismissed upon motion of the government and a subsequent charge is filed against the defendant for the same offense, the seventy-day period is tolled during the period between the dismissal and the subsequent charge. 18 U.S.C. Sec. 3161(h)(6). See also United States v. Bilsky, 664 F.2d 613, 619 (6th Cir.1981). The period between the dismissal of the indictment on May 22, 1992, and the filing of the superseding indictment on August 13, 1992, is thus excluded. Because the statute states that the subsequent charge is to be treated as if there had been "no previous charge," moreover, see 18 U.S.C. Sec. 3161(h)(6), the seventy-day clock does not start running again until the later of the superseding indictment or the defendant's first appearance thereon. See United States v. Leone, 823 F.2d 246, 248-49 (8th Cir.1987). In Mr. Layne's case, it was the arraignment on September 22, 1992, that started the time running again.
 
 
 20
 Finally, Sec. 3161(h)(1)(F) excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." This provision covers two periods in Mr. Layne's case: (1) the time from the filing of Mr. Carroll's motions on February 18, 1992, to the May 8 hearing at which the motions were disposed of, and (2) the time from the filing of Mr. Layne's motion to dismiss (October 9, 1992) to the denial of the motion at the hearing on October 29, 1992. The seventy-day period was tolled during the entirety of both periods. Henderson v. United States, 476 U.S. 321, 326 (1986).
 
 
 21
 Citing our recent decision in United States v. Moran, 998 F.2d 1368 (6th Cir.1993), Mr. Layne argues that only thirty of the eighty-one days between the filing of and the ruling on Mr. Carroll's motions are properly excludable. Mr. Layne further contends that because the government filed no answers to Mr. Carroll's motions and then conceded all of the motions at the hearing held on May 8, 1992, Mr. Carroll's motions were "under advisement" as soon as they were filed.
 
 
 22
 This argument is based on an incorrect reading of Moran, and it is inconsistent with the Supreme Court's decision in Henderson. In Moran, 998 F.2d at 1371, we applied the thirty-day limitation of Sec. 3161(h)(1)(J) to the time the district court took to rule on pretrial motions after the hearing on the motion. ("The thirty-day benchmark in section 3161(h)(1)(J) requires prompt disposition of the motion after the hearing is held and the district court has received all supplemental filings to avoid restarting the speedy-trial clock.") In Henderson, 476 U.S. at 329, the Court held that the "entire period" between the filing of the motion and the conclusion of the hearing is excluded. The Supreme Court read the "under advisement" language in Sec. 3161(h)(1)(J) to indicate that where a pretrial motion is to be decided on the papers filed without a hearing, the thirty-day limitation is triggered when the court receives all the papers it reasonably expects to receive; where a hearing is held on a motion, the thirty-day limitation kicks in after the conclusion of the hearing or upon completion of the filing of post-hearing documents. Id. at 329-330. See also Mentz, 840 F.2d at 326. Moran does not affect the period between the filing of and the hearing on Mr. Carroll's pretrial motions, and the running of the seventy-day clock was tolled during that entire period.
 
 
 23
 To summarize, the following days are properly excludable for purposes of the Speedy Trial Act:
 
 
 24
 1) The date of Mr. Layne's arraignment, January 22, 1992;
 
 
 25
 2) The date of Mr. Carroll's pretrial conference, January 28, 1992;
 
 
 26
 3) The dates of Mr. Layne's pretrial conferences, January 30, 1992, and September 29, 1992;
 
 
 27
 4) The eighty-one days between the filing of Mr. Carroll's pretrial motions on February 18, 1992, and the May 8, 1992, hearing on those motions;
 
 
 28
 5) The 124 days between the May 22, 1992, dismissal of the indictment without prejudice and Mr. Layne's appearance on the superseding indictment on September 22, 1992; and
 
 
 29
 6) The twenty-one days between the October 9, 1992, filing of Mr. Layne's motion to dismiss and the district court's October 29, 1992, decision denying the motion.
 
 
 30
 Of the 300 days between Mr. Layne's arraignment and the commencement of his trial, 230 days were excludable. The total of 70 non-excludable days was within the statute.
 
 III
 
 31
 To prove the mailing of one of the credit cards identified in the superseding indictment, the government presented the testimony of a fraud investigator for Security Bank & Trust Co., the issuer of the card. In connection with this testimony, the government was allowed to introduce certain business records pertaining to the credit card, including a handwritten document known as a Mass Reissuance Daily. (Mr. Layne refers to the Mass Reissuance Daily as a computer-generated document; the record, however, shows it is a handwritten document.) The district court admitted the exhibit over objection.
 
 
 32
 To prove the mailing of a credit card issued by Manufacturer's Bank, the government presented the testimony of Deborah Smith, who worked for the bank at the time the card was mailed. Ms. Smith testified to the bank's business practices with regard to the issuance and distribution of credit cards. Neither Defendant objected to Ms. Smith's testimony, and no documentary evidence came in at this time.
 
 
 33
 To prove the mailing of the Detroit Pistons tickets, the government presented the testimony of Angelo Finazzo, who was responsible for printing and mailing out such tickets. In connection with his testimony the government offered daily business logs and a print-out of an account documenting the purchase of the tickets in question. These documents were admitted without objection.
 
 
 34
 On appeal, Mr. Layne and Mr. Carroll challenge the district court's admission of computerized and other business records. Mr. Layne contends that computerized records require a foundation beyond that required for other business records; Mr. Layne and Mr. Carroll also argue that the government's foundation witnesses lacked sufficient personal knowledge.
 
 
 35
 Under Rule 803(6), Fed.R.Evid., business records are not excluded as hearsay if the offering party can show that (1) the records were made in the course of a regularly conducted business activity; (2) the records were kept in the regular course of business; (3) it was the regular practice of the business to make the records; and (4) the records were made by a person with knowledge of the transaction or from information transmitted by a person with knowledge. See United States v. Fawaz, 881 F.2d 259, 266 (6th Cir.1989); Redken Laboratories v. Levin, 843 F.2d 226, 229 (6th Cir.), cert. denied, 488 U.S. 852 (1988).
 
 
 36
 Insofar as timely objections were made, the district court's evidentiary rulings are reviewable under an abuse of discretion standard. United States v. Hathaway, 798 F.2d 902, 906 (6th Cir.1986). No objections were made to Ms. Smith's testimony or to the business records admitted through Mr. Finazzo's testimony, and this evidence must stand unless its receipt constituted plain error. United States v. Frady, 456 U.S. 152, 163 (1982).
 
 
 37
 Mr. Layne relies on our decision in United States v. Russo, 480 F.2d 1228 (6th Cir.1973), cert. denied, 414 U.S. 1157 (1974), for the proposition that computer-generated business records cannot be admitted without a showing of the accuracy and reliability of the hardware involved, as well as evidence of procedures for input control. Mr. Layne claims too much for Russo.
 
 
 38
 The computer records at issue in Russo contained extensive and complex statistical data involving thousands of insurance payments made over the course of a year. Extensive testimony was presented as to the accuracy of the information contained in the computer records and the input procedures for that information. This court stated that "[a]ssuming that properly functioning computer equipment is used, once the reliability and trustworthiness of the information put into the computer has been established, the computer printouts should be received as evidence of the transactions covered by the input." 480 F.2d at 1239-40. The reference to "properly functioning computer equipment" should not be read to create an additional foundation requirement beyond those set out in Fed.R.Evid. 803(6); the opinion goes on to state that "[n]o evidence was introduced which put in question the mechanical or electronic capabilities of the equipment[,]" id. at 1240, indicating a presumption that the computer is properly functioning in the absence of contrary evidence. See United States v. Moore, 923 F.2d 910, 915 (1st Cir.1991) ("[I]t is not required that computers be tested for programming errors before computer records can be admitted under Fed.R.Evid. 803(6)"); United States v. Catabran, 836 F.2d 453, 457 (9th Cir.1988); United States v. Young Bros., 728 F.2d 682, 693 (5th Cir.), cert. denied, 469 U.S. 881 (1984).
 
 
 39
 In the case at bar the district court did not commit plain error in admitting the print-out of the ticket purchaser's account. The government established a proper foundation for admission of the record, and no evidence was offered to put the capabilities of the computer equipment into question. Records prepared in the normal course of business are usually reliable enough to be admissible. Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence Manual p 16.06[b] (1991). Both defendants had an opportunity to cross-examine the government's foundation witnesses here, and there was no violation of the defendants' rights under the Confrontation Clause. See California v. Green, 399 U.S. 149, 154 (1970).
 
 
 40
 The defendants contend that the government's foundation witnesses lacked sufficient personal knowledge of the information contained in the business records. As we noted above, no documents were introduced through Ms. Smith's testimony; she testified as to business practices, not records. All of the foundation witnesses demonstrated sufficient knowledge of their companies' record-keeping practices to pass muster. Rule 803(6), Fed.R.Evid., requires only that a business record be made from information transmitted by a person with knowledge, not that the "qualified witness" presenting foundation evidence have personal knowledge. It is well-settled that a qualified witness, for purposes of Rule 803(6), need only be familiar with the record-keeping and business practices of the entity generating the record; such a witness does not have to have personal knowledge of the information contained in the record. United States v. Hathaway, 798 F.2d 902, 906 (6th Cir.1986); United States v. Reese, 568 F.2d 1246, 1252 (6th Cir.1977).
 
 IV
 
 41
 At trial the government presented the testimony of Roger Ball, an expert in latent fingerprint analysis. The defendants completed their cross-examination of Mr. Ball on the same day that he gave his testimony on direct. The following day, after the witness had been excused, Mr. Layne's attorney offered a publication called The Science of Fingerprinting for the purpose of impeaching Mr. Ball's testimony. The district court declined to receive the document as a learned treatise. The lawyer then asked for the opportunity to read certain pages from the publication to the jury. This request was also denied.
 
 
 42
 Rule 803(18), Fed.R.Evid., provides for admission of the following evidence:
 
 
 43
 "To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits."
 
 
 44
 The district court committed no error in refusing to admit The Science of Fingerprinting, which was neither called to Mr. Ball's attention upon cross-examination nor relied upon by him in direct examination.
 
 
 45
 The district court specifically inquired of both defendants whether they would have enough time to complete their cross-examination of Mr. Ball before the court's normal daily adjournment. Both defendants assured the court they had sufficient time, and no one requested that Mr. Ball be directed to return to court the next day. When asked about this at oral argument, Mr. Layne's attorney offered no justification for his failure to refer to the treatise during his cross-examination of Mr. Ball.
 
 V
 
 46
 The defendants contend that the district court erred in increasing the offense level under U.S.S.G. Sec. 2B1.1(c)(5) for more than minimal planning. We conclude that the counts of conviction justified such an increase.
 
 
 47
 Count 1 involved a Mastercard credit card issued by Trenton Bank & Trust Company to Christopher Gronda. Trenton Bank & Trust mailed the card on January 22, 1990, but Mr. Gronda never received it. On January 27, 1990, two charges were made on Mr. Gronda's card at the Pegasus Taverna restaurant in Detroit. Fingerprints found on one of the Pegasus Taverna charge slips were identified as Mr. Layne's. On January 28, 1990, another charge was made to Mr. Gronda's credit card at a bar called Tom's Landing Strip.
 
 
 48
 Counts 2 and 3 involved a Mastercard credit card issued by Manufacturer's Bank to Paul Hornick. Manufacturer's Bank mailed the credit card to Mr. Hornick in January of 1991; Mr. Hornick never received the card. Mr. Layne and Mr. Carroll attempted to use Mr. Hornick's credit card at Tom's Landing Strip soon after it was mailed.
 
 
 49
 Count 4 concerned the Detroit Pistons tickets. Angelo Finazzo mailed forty tickets and twenty parking passes to Karolyn Lowler in Trenton, Michigan on October 16, 1991. Ms. Lowler never received the tickets. Ms. Lowler's tickets turned up in the hands of Julie Cryderman, who bought them from Rick Knaf. Mr. Knaf had purchased the tickets from defendant Layne.
 
 
 50
 Section 2B1.1(b)(5) of the Sentencing Guidelines states that in cases of larceny, embezzlement, and other forms of theft, the offense level should be increased by two levels "[i]f the offense involved more than minimal planning." The sentencing court's determination that the conduct of these defendants involved more than minimal planning is a finding of fact that can be set aside only if we conclude that it was clearly erroneous. United States v. Williams, 993 F.2d 1224, 1227 (6th Cir.1993).
 
 
 51
 The Sentencing Guidelines identify three situations that warrant enhancement for more than minimal planning:
 
 
 52
 1) cases where the planning involved is "more ... than is typical for commission of the offense in a simple form,"
 
 
 53
 2) cases where "significant affirmative steps were taken to conceal the offense," and
 
 
 54
 3) cases "involving repeated acts over a period of time, unless it is clear that each instance was purely opportune."
 
 
 55
 U.S.S.G. Sec. 1B1.1, comment. (n. 1(f)). See also United States v. Ivery, 999 F.2d 1043, 1046 (6th Cir.1993).
 
 
 56
 A determination of whether more than minimal planning occurred is based on the overall offense, not the role of an individual offender. Id. Defendants Layne and Carroll contend that their conduct does not fit any of the three paradigms. They argue that their actions, though repeated, were spontaneous and constituted only occasional misconduct of an opportunistic nature. We are not persuaded.
 
 
 57
 The defendants' actions span a period of more than one year, and this is significant. See United States v. Mullins, 996 F.2d 1170, 1171 (11th Cir.1993) (upholding a finding of more than minimal planning where the defendant, on three occasions, purchased cars with bad checks). Mr. Carroll's conduct involved feeling an envelope, opening the envelope open to get at its contents, putting the contents in his pocket, walking out, and then using the stolen object or giving it to Mr. Layne to use. When the defendants used a stolen credit card, moreover, they falsely signed the charge slip with the name of the individual to whom the card had been issued--actions involving both deception and affirmative steps to conceal their wrongdoing. See United States v. Jones, 933 F.2d 353, 355 (6th Cir.1991) (upholding an enhancement for more than minimal planning where the defendant obtained credit cards by using false names and social security numbers and then used the illegally obtained credit cards to make several purchases).
 
 VI
 
 58
 Mr. Carroll challenges the decision of the district court to increase his offense level under U.S.S.G. Sec. 3B1.3 for abuse of a position of trust. Mr. Carroll contends that, as a postal worker, he did not occupy a position of trust.
 
 
 59
 In United States v. Hill, 915 F.2d 502 (9th Cir.1990), the Ninth Circuit highlighted two related factors that are indicative of a position of trust. A person is in a position of public or private trust (a) if there is no expedient or objective way to determine his honesty or (b) if there is no easy way to monitor or observe his activities. Id. at 506-07.
 
 
 60
 The Commentary to Sec. 3B1.3 mentions embezzlement by a bank teller as an example of when the abuse of trust adjustment would not apply, and Mr. Carroll seeks to liken his position to that of a bank teller. However, an examination of Mr. Carroll's position and that of a bank teller, in the context of the considerations set out in Hill, indicates that the sentencing court properly found that Mr. Carroll occupied a position of trust. In the case of a bank teller the daily accounting provides an objective and expedient way to determine the teller's honesty. If a discrepancy appears on the daily accounting, the teller is presumed to be responsible. The situation of a postal clerk is not comparable, for not every item of mail he handles is registered. The time that elapsed between the commission of Mr. Carroll's crimes and their detection suggests that Carroll was in a position of trust, as does the fact that he was able to purloin credit cards repeatedly. These were "difficult-to-detect wrong[s]." United States v. Ajiboye, 961 F.2d 892, 895 (9th Cir.1992).
 
 
 61
 Assuming Mr. Carroll occupied a position of trust, the inquiry turns to whether his position substantially facilitated commission or concealment of the offense in question. Williams, 993 F.2d at 1227; Hill, 915 F.2d at 508. The record supports a finding that Mr. Carroll's job as a clerk at the post office put him in a superior position to steal mail--a position that substantially facilitated commission of the charged offenses. See Hill, 915 F.2d at 508; see also Ajiboye, 961 F.2d at 895 (upholding an enhancement for abuse of position of trust to mail carrier's conviction of possession of stolen mail). There is no clear error in the district court's determination that Mr. Carroll abused a position of trust.
 
 
 62
 AFFIRMED.
 
 
 
 *
 Honorable John G. Heyburn II, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 Mr. Layne and the government disagree as to the date when the thirty-day clock begins running, Mr. Layne using August 8, 1991 and the U.S. using August 9, 1992. The thirty-day clock began on the date of Mr. Layne's arraignment, which was August 9, 1992. See United States v. Leone, 823 F.2d 246, 248-49 (8th Cir.1987)