97 F.3d 1453
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven A. MIZELL, Claude E. Moore, Jr., and Kennith D. Ware,
Defendants-Appellants.
 Nos. 95-5236, 95-5247 and 95-5299.
 United States Court of Appeals, Sixth Circuit.
 Sept. 17, 1996.
 
 Before: NORRIS, SILER, and GODBOLD,* Circuit Judges.
 SILER, Circuit Judge.
 
 
 1
 Steven A. Mizell, Claude E. Moore, Jr., and Kennith D. Ware (collectively, "the defendants") appeal the sentences for their involvement in a scheme to defraud their employer. For the reasons stated hereinafter, this court affirms.
 
 I. Introduction
 
 2
 The defendants were employed at the Kimberly Clark Corporation ("Kimberly Clark") in Memphis. They successfully engaged in a scheme to defraud Kimberly Clark of approximately $970,000 by fraudulently ordering forklift parts between 1983 and 1988. When the company discovered the scheme, it notified the FBI and obtained a civil judgment against the defendants. On October 8, 1993 a federal grand jury returned a twenty-five count indictment against the defendants, charging them with mail and wire fraud, 18 U.S.C. §§ 1341, 1343, and conspiracy to commit mail and wire fraud, 18 U.S.C. § 371. Mizell pled guilty to one count of mail and wire fraud pursuant to a plea agreement on October 17, 1994. A jury found Moore and Ware guilty on all counts on October 25, 1994. Moore was sentenced to sixty months imprisonment; Ware for a term of thirty-three months; and Mizell, eighteen months. Defendants allege a number of issues on appeal related solely to their sentences.
 
 II. Steven Mizell
 A. Abuse of Trust
 
 3
 The district court increased Mizell's offense level for abuse of a position of trust. See USSG § 3B1.3 (1987)[1] ("If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels."). The district court theorized that Mizell, as supervisor of the tractor shop, was able to use his position to perpetrate the fraud by requisitioning forklift parts. Alternatively, the court noted that Mizell was trained as an engineer, enabling him to facilitate the fraud. This court reviews de novo the district court's conclusion that Mizell held a position of trust under § 3B1.3. United States v. Ragland, 72 F.3d 500, 502 (6th Cir.1996); cf. United States v. Williams 993 F.2d 1224, 1227 (6th Cir.1993) ("The district court's finding regarding application of section 3B1.3 is a factual finding. This court reviews the sentencing court's factual findings for clear error and gives due deference to the court's application of the guidelines.") (internal citations omitted).
 
 
 4
 Mizell's engineering training ("special skills") and supervisory role ("position of trust") were anticipated in the guideline commentary. The critical inquiry is whether his skills or position significantly facilitated the commission or concealment of the offense. See United States v. Moored, 997 F.2d 139, 144 (6th Cir.1993) ("[T]he evidence must show that the defendant's position with the victim of the offense significantly facilitated the commission of the offense."). There is no evidence in the record that Mizell's training as an engineer or his other unique skills enabled him to facilitate this offense. The question at bar is whether Mizell's position enabled him to significantly facilitate the offense.
 
 
 5
 For the increase to apply, "[t]he position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could easily have been afforded to other persons." Williams, 993 F.2d at 1227-28 (citation omitted). The district court found that as a supervisor, Mizell was authorized to order and did in fact order forklift parts. It noted that due to Kimberly Clark's computer scheme, the tractor shop supervisor "had a unique role" in Kimberly Clark's ordering scheme. Mizell's authority was limited to $300; orders above that amount required the signature of his supervisor. However, while Mizell's supervisors "had to sign off on things," the court found that they "did so on an informal basis."
 
 
 6
 Mizell was part of the scheme to fraudulently requisition forklift parts several months prior to his attaining supervisor status. Before this time, the scheme developed around him--he was not brought into the conspiracy until several years after its inception. Nevertheless, Mizell's inclusion in the scheme, especially as tractor shop supervisor, made the scheme more efficient and gave the scheme an aura of authenticity that permitted the fraud to go undetected. Kimberly Clark placed Mizell in a position of private trust; as tractor shop supervisor, Mizell had the unique authority to requisition parts. See United States v. Dilts, 47 F.3d 1171, 1995 WL 7954, at ** 3 (6th Cir. Jan. 9, 1995) (unpublished) (finding that petroleum department manager who ordered fuel and filled out fuel delivery ledgers was in a position of trust). The district court did not err in applying the abuse of trust enhancement.
 
 B. Obstruction of Justice
 
 7
 The district court increased Mizell's offense level for obstruction of justice. See USSG § 3C1.1 ("If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels."). Section 3C1.1 "provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or to otherwise willfully interfere with the disposition of criminal charges." Id. comment. "[T]estifying untruthfully ... concerning a material fact ... during a ... trial ... or any other judicial proceeding" may provide a basis for an adjustment under this section. Id. The district court supported the adjustment by noting that Mizell impeded a criminal investigation by perjuring himself during the course of the civil proceedings.
 
 
 8
 "Sentencing courts retain discretion in deciding whether a defendant's actions constitute an obstruction of justice punishable under the guidelines, and we review such decision under an abuse of discretion standard." United States v. Smart, 41 F.3d 263, 264 (6th Cir.1994) (quoting United States v. Medina, 992 F.2d 573, 591 (6th Cir.1993)). "[C]ircuits have upheld a trial court's determination that justice was obstructed where judges have made a 'specific finding' that a [defendant's actions amounted to obstruction]." Smart, 41 F.3d at 265 (quoting Medina, 992 F.2d at 591). Therefore, if the "trial court made specific findings, by a preponderance of the evidence," that Mizell obstructed justice, this "court has no discretion, but must increase the offense level by the amount called for in the applicable provision." Id.
 
 
 9
 The district court made a number of findings regarding this enhancement. The court found that the defendants had knowledge that a criminal investigation was underway when they prepared for the civil trial. The court observed that the FBI had attended the civil trial. The district court implied that the civil proceeding was part of the investigation by the FBI and that a federal investigation was underway during the civil proceedings. By "sticking together" and denying any wrongdoing--in the form of perjury--the court declared that Mizell "directly impeded the [FBI] investigation."
 
 
 10
 Mizell does not dispute that he perjured himself in the civil proceedings. He suggests, however, that he never "willfully impeded ... the administration of justice during the investigation ... of the instant case." § 3C1.1 (emphasis added). Mizell suggests that it is the case sub judice--the criminal proceeding--with which the obstruction enhancement is concerned. See United States v. Perdomo, 927 F.2d 111, 118 (2d Cir.1991) (reasoning that " § 3C1.1 refers to efforts to obstruct the prosecution of the conviction offense only"). There is no evidence that Mizell actively (or actually) impeded the criminal investigation. He claims that the guideline commentary does not contemplate that his perjury in civil trial should be considered an obstruction of justice that warrants enhancement. Moreover, he submits that if he did impede an investigation, there is no evidence that the obstruction was willful.
 
 
 11
 It is true that the record fails to support the court's finding that Mizell impeded the FBI investigation. However, this court merely requires the perjury to be material and nontrivial to warrant the obstruction enhancement. United States v. Aideyan, 11 F.3d 74, 76 (6th Cir.1993). "[T]he lie need not relate to the charges brought against the defendant.... [T]he test is not whether the false statement was about the actual crime charged, but whether it was made during the investigation, prosecution, or sentencing of the instant offense.' " Id. (citing United States v. Crousore, 1 F.3d 382, 385 (6th Cir.1993)). Like the application note examined in Aideyan, note 3 of the 1987 commentary does not require the statement at issue to "significantly impede" a criminal investigation to justify an enhancement; it merely requires that the testimony be untruthful "concerning a material fact" during any judicial proceeding. A "material fact" has since been defined as one that "would tend to influence or affect the issue under determination." USSG § 3C1.1, comment. (n. 5) (1994). Mizell perjured himself in a judicial proceeding about events that underlined his subsequent indictment and guilty plea. See United States v. Nesbitt, 90 F.3d 164, 168-69 (6th Cir.1996) (noting that obstruction enhancement could be applied to defendant who lied in a civil forfeiture proceeding that was related to the offense of conviction). A false statement made at trial regarding events that were collateral, but highly related, to the eventual offense of conviction can support the obstruction of justice enhancement. Id. at 169.
 
 
 12
 Because the district court found that Mizell perjured himself on a material matter during the course of a criminal investigation, this inquiry on appeal is at an end. See Crousore, 1 F.3d at 386 ("When a defendant perjures himself before the court as to a material matter, the district court is generally without discretion in imposing the obstruction of justice enhancement."). The civil case against him was sufficiently related to the criminal investigation to support the enhancement. The district court did not abuse its discretion by applying the obstruction of justice enhancement to Mizell.
 
 C. Acceptance of Responsibility
 
 13
 Under USSG § 3E1.1, an offense level can be reduced by two levels "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense of conviction." Mizell concedes that a reduction for acceptance of responsibility is a factual determination left to the sound discretion of the district court and will not be disturbed unless clearly erroneous. United States v. Nichols, 979 F.2d 402, 414 (6th Cir.1992), cert. granted on other grounds, 509 U.S. 953 (1993), aff'd, 511 U.S. 73 (1994). Mizell suggests that he pled guilty, admitted fault, and fully cooperated with the government, all of which should have made him eligible for this reduction.
 
 
 14
 It is true that "although initially attempting to conceal the crime," a defendant can subsequently accept responsibility for the crime if he abandons all attempts to obstruct justice. See United States v. Hopper, 27 F.3d 378, 383 (9th Cir.1994); see also United States v. Rambur, --- F.3d ----, 1996 WL 428358, at * 5 (6th Cir. July 30, 1996) (unpublished) (noting that only in extraordinary cases can adjustments be given for both obstruction of justice and acceptance of responsibility); cf. United States v. Jackson, 25 F.3d 327, 332 (6th Cir.) (" '[A] guilty plea does not entitle a defendant to a sentence reduction as a matter of right.' ") (quotation omitted), cert. denied, 114 S.Ct. 344 (1994). Mizell gallantly makes the case that he should receive the acceptance of responsibility reduction. However, in that this court affords the sentencing court "great deference" on this issue, United States v. Greene, 71 F.3d 232, 234 (6th Cir.1995), it is difficult to determine that the court's denial of the reduction is clearly erroneous. Mizell perjured himself at the civil proceeding. The sentencing court considered that he might have been concealing assets to avoid the judgment obtained by Kimberly Clark. The court considered the evidence and denied the reduction. This finding was not clearly erroneous.
 
 D. Due Process Concerns
 
 15
 Mizell alleges that the district court relied on testimony from the criminal trial and his co-defendant's sentencing hearings during Mizell's sentencing hearing and that the admission of this evidence at his sentencing was improper and violated his due process rights. Specifically, Mizell indicates that evidence concerning two issues was gleaned from outside of his presentence report: that the defendants knew a criminal investigation was underway during the civil trial and that the tractor shop supervisor position was a "position of trust." He alleges that because the court considered trial testimony or that which was testified to other sentencing hearings, and he was not on notice that these facts would be used against him, he was denied due process.
 
 
 16
 It is true that claims of due process violations can be brought under the guidelines. However, no due process violation occurs if all of the facts appear in the presentence report. In a letter appended to the presentence report (the victim impact statement), a Kimberly Clark lawyer reported that
 
 
 17
 Mizell was only able to perpetrate his frauds because he occupied a position of trust with Kimberly-Clark. That is, Mr. Mizell acted as the supervisor of the tractor shop.... In those capacities, Mr. Mizell was responsible for authorizing purchases of parts. He abused that position by preparing fraudulent documents which would make it appear as if parts had not been purchased.... Moreover, Mr. Mizell involved subordinates and others in his scheme. Thus, Mr. Mizell's reprehensible conduct was a very serious breach of trust.
 
 
 18
 In a supplemental addendum to the presentence report, the probation officer reported that
 
 
 19
 Mr. Mizell was under investigation at the time he committed the numerous false statements during his civil proceedings and in all likelihood during his deposition. There was an FBI agent who was present in the courtroom during the civil proceedings.
 
 
 20
 The court relied on these facts, and others that can be found in the presentence report, in determining Mizell's sentence. See United States v. Pimental, 932 F.2d 1029, 1032 (2d Cir.1991) (finding due process satisfied when presentence report sets out facts established at codefendant's trial). As the Pimental court concluded:
 
 
 21
 By providing the appellant with a copy of the [Presentence Report], the Government provided him with notice of all the relevant information that could be used against him, and at his sentencing hearing, appellant had a meaningful opportunity to challenge the accuracy and sufficiency of this information. Due process requires no more.
 
 
 22
 Id.
 
 III. Kennith Ware
 A. Amount of Loss--Procedure
 
 23
 Ware's presentence investigation report (PSR) initially set the loss figure applicable to him under § 2F1.1 at $29,438. Neither the defendant nor the government indicated any objection to Ware's PSR. The government subsequently moved for an upward departure or recalculation from the Sentencing Guidelines, on the basis that the probation report did not include Moore's role in assisting the co-conspirators. The district court granted the government's motion, holding Ware responsible for losses in excess of $500,000.
 
 
 24
 Ware contends that because the government failed to object to the loss figure at the appropriate time, it should not have been permitted to make any argument at the sentencing hearing. The basis of Ware's contention is Local Rule 21, which indicates that the government should have filed an earlier objection to the PSR. Notwithstanding the fact that Ware failed to object to the government's untimely objection, the district court has a wide discretion in the application of its own local rules. Ware cites no precedent that suggests that this court will enforce a local procedural rule. Ware suffered no prejudice in that he was given three weeks to prepare for the government's motion. The recalculation by the district court was not in error.
 
 B. Amount of Loss--Total
 
 25
 Ware contests the total loss figure, over $500,000, attributed to him at sentencing. Ware was convicted of the conspiracy of committing mail and wire fraud as well as the crime of mail and wire fraud themselves. In a conspiracy, "all reasonably foreseeable acts ... of others in furtherance of the jointly undertaken criminal activity" is "relevant conduct." USSG § 1B1.3(a)(1)(B). It is not unreasonable that as a participant to the conspiracy, Ware should be held accountable for the amount that the conspiracy defrauded Kimberly Clark. Moreover, Ware concedes that the court need only make a reasonable estimate of the loss. USSG § 2F1.1 comment. (n. 8).
 
 
 26
 Ware does argue, however, that the total loss was not supported by the evidence. Evidence was submitted that the conspirators defrauded Kimberly Clark of more than $700,000. It is reasonable to conclude that Ware should be held accountable for the actions of his co-conspirators. Ware counters that the fraudulent activity involved a number of different schemes; attributing loss figures from these "other schemes" was not reasonably foreseeable to him. The evidence at trial showed that Ware was involved in the scheme for almost four years and that he knew others were involved. It was reasonable for the district court to presume that Ware reasonably foresaw other losses involved, even if he was not directly responsible for the individual losses. It was not clear error to hold Ware responsible for the losses of his co-conspirators.
 
 
 27
 IV. Claude E. Moore, Jr.
 
 A. Double Counting
 
 28
 Moore argues that the district court improperly increased his offense level four points under § 3B1.1(a) (aggravating role) and two points under § 2F1.1 (more than minimal planning). See United States v. Romano, 970 F.2d 164, 167 (6th Cir.1992). However, a clarifying amendment to the sentencing guidelines has indicated that such adjustments are to be applied cumulatively. USSG § 1B1.1, comment (n. 4) (effective Nov. 1, 1993). This court has recently determined that the clarifying amendment has abrogated the effect of Romano. See United States v. Cobleigh, 75 F.3d 242, 251 (6th Cir.1996). Therefore, the district court did not err by increasing Moore's offense level pursuant to these sentencing guideline provisions.
 
 B. Obstruction of Justice
 
 29
 Moore echoes Mizell's argument that § 3C1.1 cannot be used to increase his offense level. See infra Part IIB. His position is no different from Mizell's. Thus, the sentencing court was not in error in applying this enhancement.
 
 C. Fine and Restitution
 
 30
 The district court imposed a fine of $25,000 and a restitution order of $250,000 against Moore. A district court's findings with regard to ability to pay is subject to a clearly erroneous standard of review. See United States v. Anglian, 784 F.2d 765, 768 (6th Cir.) (noting that district court is "vested with wide discretion" in determining a restitution order), cert. denied, 479 U.S. 841 (1986). In the case at hand, the court only noted that it believed that the fine and restitution were reasonable. Given that the district court queried whether Moore may come into money in the future and whether Moore had engaged in fraudulent conveyancing of his assets, the district court's order was not an abuse of discretion. See United States v. Frost, 914 F.2d 756, 774 (6th Cir.1990) ("The district court considered the appropriate factors and did not abuse its discretion...."); cf. United States v. Bondurant, 39 F.3d 665, 668 (6th Cir.1994) ("[A] sentencing court is not required to make factual findings regarding a defendant's ability to pay and ... indigency is not a bar to a restitution order, because ability to pay is only one factor to consider in making a restitution determination.") (citing United States v. Blanchard, 9 F.3d 22, 24-25 (6th Cir.1993)).
 
 
 31
 AFFIRMED.
 
 
 
 *
 The Honorable John C. Godbold, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation
 
 
 [1]
 The presentence report cited the 1987 Sentencing Guidelines to set the sentences, and unless otherwise indicated, this court will also cite to the 1987 manual