**Rheva A. WILLIAMS, Plaintiff,**

v.

**CHARLOTTESVILLE SCHOOL BOARD, Defendant.**

Civil Action No. 94–0050–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Oct. 4, 1996.

---

Margaret McLeod Cain, Charlottesville, VA, for plaintiff.

George Harrison Gilliam, Neal L. Walters, Gilliam, Scott & Kroner, P.C., Charlottesville, VA, for City of Charlottesville.

Douglas Leigh Guynn, Jennifer Ellen Kirkland, Thomas E. Ullrich, Wharton, Aldhizer & Weaver, P.L.C., Harrisonburg, VA, for Charlottesville School Board.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

On September 17, 1996, United States Magistrate Judge B. Waugh Crigler issued a Report and Recommendation in which he recommended that Plaintiff Rheva A. Williams's motion for summary judgment under Fed.R.Civ.P. 56 be denied and that of Defendant Charlottesville School Board ("School Board") be granted. Both parties filed objections, obligating this court to review the case de novo. *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir.1982). For the reasons stated by the Magistrate and this Memorandum Opinion, plaintiff's motion is denied, and defendant's motion is granted.

I.

This case has a long history, and tracing some of its steps might provide worthwhile background context.

Plaintiff is a black woman who was employed by the School Board from 1985 to 1994 as an elementary school teacher for emotionally disturbed children. In August 1992, the school superintendent received an unsolicited letter from a black female instructional assistant who had been assigned to plaintiff's classroom. In that letter, the instructional assistant urged the superintendent to remove plaintiff from the classroom because of her allegedly abusive disciplinary techniques.

In October 1992, the superintendent proposed that plaintiff be placed on administrative leave with full pay and benefits pending the resolution of the allegations of child abuse. The superintendent reported plaintiff to the Department of Social Services ("DSS") for investigation of the claim that plaintiff had abused her students. On October 12, 1992, the DSS concluded that the accusations against plaintiff were well-founded and that plaintiff had engaged in "Level 2" child abuse with the "Bizarre Discipline" she imposed on the children. Plaintiff appealed this finding, remaining on administrative leave (with full pay and benefits). The first-level appeal upheld the DSS determination. A second-level appeal (to the state) was scheduled for March 3, 1993, but, pursuant to plaintiff's request, the appeal was continued until April 1993. The superintendent informed plaintiff that he could not await the results of the second-level appeal and recommended to the School Board that plaintiff be dismissed. On April 12, 1993, the superintendent advised plaintiff that he would recommend to the School Board that plaintiff be terminated for "fail[ing] to meet the school division's standards and expectations that its teachers contribute to and provide a consistently positive learning environment." Plaintiff requested a public hearing on April 28, 1993, opposing the superintendent's decision. Although the superintendent opposed plaintiff's request as untimely, the School Board overruled the

superintendent and granted plaintiff a hearing.

The hearing stretched for seven days (May 27–June 2, 1993), at the end of which the School Board rejected the superintendent's recommendation of dismissal and instead placed plaintiff on probation and suspended her for the 1992–1993 school year, albeit with pay. Because the matter was still on appeal, the School Board disregarded the DSS's findings of abuse and based plaintiff's probation on her lack of good behavior and competent service—plaintiff had been found insubordinate, uncooperative, and generally failed to abide by the instruction of her superiors.

On June 14, 1993, the Virginia DSS ("VA DSS") upheld the determination that plaintiff had engaged in "Bizarre Discipline—Level 2." On July 22, 1993, the School Board met in executive session. On that day, the School Board confirmed plaintiff's probationary status and resolved to initiate proceedings possibly to place plaintiff on suspension without pay. The School Board offered plaintiff another hearing during which the School Board would review the findings by DSS (upheld by the VA DSS). On August 9, 1993, the School Board conducted a hearing on the impact of the finding of child abuse upheld by the VA DSS. Although plaintiff was given the opportunity to present witnesses or evidence and address herself to the School Board, she chose not to do so, insisting that she had nothing to add to the claims she had made during the previous hearing. Plaintiff did not contest the finding of child abuse, nor did she challenge her probationary status. On August 17, 1993, the School Board voted to suspend plaintiff, without pay, but left open to plaintiff the opportunity to petition for reconsideration should there be a final determination invalidating the considerations upon which the School Board based its decision.

On March 18, 1994, the superintendent recommended nonrenewal of plaintiff's employment. On March 24, 1994, plaintiff attempted to invoke the procedure applicable to the dismissal of a "continuing contract teacher," but the School Board advised her that she was not entitled to the procedures available continuing contract teachers because she was a probationary contract teacher. On April 14, 1994, the School Board voted not to renew plaintiff's probationary contract of employment. On September 6, 1994, plaintiff initiated this action.[1]

On March 11, 1996, the Magistrate recommended that eight of plaintiff's claims against defendant be dismissed upon defendant's motion for summary judgment pursuant to Fed. R.Civ.P. 56. The eight dismissed counts consisted of the following: (1) a claim of racial discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*; (2) a claim of retaliation for plaintiff's opposition to racial discrimination prohibited by Title VII; (3) claims under 42 U.S.C. §§ 1981 and 1982; (4) a claim under 42 U.S.C. § 1983 based on a violation of the First Amendment; (5) a claim under 42 U.S.C. § 1983 based on a violation of the Fourteenth Amendment; (6) a state law claim alleging conspiracy to interfere with plaintiff's right to contract; (7) claims under state law and 42 U.S.C. § 1985 alleging conspiracy to violate plaintiff's rights because of her race; and (8) a state law claim alleging tortious interference with contractual rights. The Magistrate's recommendation left standing only one count, a breach of continuing contract claim under state law. This court adopted the Report and Recommendation in its entirety on May 23, 1996. Subsequently this court recommitted the case to the Magistrate for further discovery. Defendant renewed its motion for summary judgment on the continuing contract claim, and plaintiff filed a cross motion for summary judgment. In his September 17, 1996 Report, the Magistrate agreed that defendant had breached its continuing contract with plaintiff, but that the breach was purely technical and any harm suffered by plaintiff was not caused by the breach. Accordingly, the Magistrate concluded that plaintiff could not prevail on her claim as a matter of law. Defendant objects to the Magistrate's determination that there was any breach on its part, and plaintiff objects to the Magistrate's substantive findings.

## II.

The Virginia Code provides the necessary background for this claim. The statu-

---

**1.** Plaintiff filed four actions in state court, and all of them have been decided against her.

tory scheme vests school boards with "exclusive final authority over matters concerning employment and supervision of [their] personnel, including dismissals, suspensions and placing on probation." Va.Code Ann. § 22.1–313. Classification of employment status for teachers is governed by § 22.1–303, which provides, in pertinent part, that "[a] probationary term of service for three years in the same school division shall be required before a teacher is issued a continuing service contract." Va.Code Ann. § 22.1–303. Under § 22.1–309, a school board may require that a continuing contract teacher serve a year's probationary term if the teacher separates from the school and subsequently returns. Otherwise, no additional probationary term need be served once a teacher has attained continuing contract status. "Teachers may be dismissed or placed on probation for incompetency, immorality, noncompliance with school laws and regulations, disability as shown by competent medical evidence, conviction of a felony or a crime of moral turpitude or other good and just cause." Va.Code § 22.1–307. Although the school board may place the teacher on probation, it cannot reclassify a continuing contract teacher as a probationary contract teacher (except as § 22.1–303 expressly permits), because § 22.1–304 directs that "[t]eachers employed after completing the probationary period *shall* be entitled to continuing contract status." *Id.* (emphasis added). Placing a continuing contract teacher on probation does not modify her continuing contract status. Hence, a continuing contract teacher who is placed on probation is nonetheless entitled to invoke the procedural guarantees applicable to a continuing contract teacher under §§ 22.1–309, 22.1–311, 22.1–312.

The Magistrate and this court have already held that the School Board could not reclassify plaintiff from her status as a continuing contract teacher (which she had concededly achieved) to probationary status, even though the School Board was fully within its rights to place plaintiff on probation. The point is that under the Virginia Code, despite the previous hearings plaintiff was given, the School Board technically had to give her yet another hearing upon request, under § 22.1–309, when the superintendent notified plaintiff that he intended to recommend she be dismissed. Therefore, defendant's arguments based on the theory that the Virginia Code contemplates that teachers may be deprived of continuing contract status if they are placed on probation must be rejected.[2]

Nonetheless, as the Magistrate noted, that does not dispose of the matter. The School Board provided plaintiff the hearing to which she was entitled the first time the superintendent recommended her dismissal (before the findings of abuse made by the DSS were affirmed), and then provided plaintiff with yet another hearing, after the VA DSS affirmed the findings of abuse below; the spirit of the statute was complied with. Plaintiff was given more than adequate notice and process, in the form of a lengthy public hearing (followed by another hearing), where the School Board indulged her desire to be heard and accepted all evidence she wished to present.[3] An additional hearing would not have changed the outcome—termination—in this case, as the affidavits of the School Board members attest, *see* Def.'s Motion, Exhibit S, and no rational fact-finder could conclude to the contrary. Hence, plaintiff suffered no injury because she was "deprived" of an additional opportunity to

---

**2.** Defendant offers other theories in support of its argument that it did not breach the contract, even as a technical matter. For instance, defendant argues that plaintiff's child abuse relieved it of any obligation to abide by contractual terms. This argument (based on state common law) cannot prevail, given that the Virginia Code expressly contemplates that continuing contract teachers who are accused of bad behavior must be granted a hearing upon demand. Defendant's other arguments are similarly lacking in merit, and, consequently, it is unnecessary for the court to address them individually, particularly because the court ultimately rules in favor of defendant in granting its motion for summary judgment.

**3.** *Cf. Goodrich v. Newport News School Board,* 743 F.2d 225, 226 (4th Cir.1984) (stating that "[w]hen the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process") (citations omitted).

appear before the School Board. Plaintiff makes no claim that she had (or currently has) new evidence to present to the School Board; nor does plaintiff claim that she would have said anything not previously heard by the School Board had she been granted a hearing. In such circumstances, the law is not so wooden that it would grant plaintiff the relief she seeks (back pay, costs, fees, etc.) for a technical breach with no practical significance.

■ In numerous walks of law the principle is endorsed that there should be no redress for technical violations of the law that do not impose harm. *See S & R, Inc. v. Nissan Motor Corp.*, 810 F.2d 195, 1987 WL 36222, *3 (4th Cir.1987) (unpublished opinion) ("[Plaintiff] has demonstrated no actionable harm from any such technical violation that would justify monetary relief."); *Halasz v. University of New England*, 816 F.Supp. 37, 45–46 (D.Me.1993) ("While the failure to include the name of the coordinator in [Defendant's] notice of its nondiscrimination policy constitutes a technical violation of the regulation, the Court finds that without a showing of harm flowing from the violation Plaintiff is entitled to no relief."); *United States of America v. Margiotti*, 85 F.3d 100, 103 (2d Cir.1996) ("Sentencing is rigid and mechanistic enough as it is without the creation of rules that treat district judges as automatons. Where, as here, the technical violation of an applicable rule was promptly corrected and caused no harm, it cannot be said that there was a denial of justice."); *United States v. Williams*, 993 F.2d 1224, 1226 (6th Cir.1993) (upholding district court's ruling because "even if the revised presentence report was a technical violation of the court's procedural order [defendant] did not suffer harm or prejudice"); *Jones v. Southern Pacific Railroad*, 962 F.2d 447, 451 (5th Cir. 1992) ("In any event, [plaintiff] failed to show material prejudice from any error. If it appears that a party suffered no harm from a technical violation of Rule 51, we will not reverse."); *Northern Petrochemical Co. v. Tomlinson*, 484 F.2d 1057, 1059 (7th Cir. 1973) (stating that unlawful disclosures did "no harm other than to stand as technical violations"); *Mihalek Corp. v. State of Michigan*, 9 F.3d 1548, 1993 WL 460787, at *3 (6th Cir.1993) (unpublished opinion) ("In this case, even if there was a technical violation of [the statute], [plaintiff] suffered no substantial harm, if any, from such violation. Therefore, [plaintiff] is not entitled to a remedy for the alleged violation of his rights."); *Kedziora v. Citicorp National Services, Inc.*, 901 F.Supp. 1321, 1332 (N.D.Ill.1995) ("In the Court's view, the fact that neither party takes home any money is an ironic and surprisingly equitable result given the nature of this case: a technical violation that caused no actual harm . . . ."); *Renaissance Center Venture v. Lozovoj*, 884 F.Supp. 1132, 1142 (E.D.Mich.1995) ("Even if [plaintiff's] metering method does violate its agreement with [a third party], which [the third party maintains it does not], the RICO plaintiffs have failed to show how this technical violation caused them economic harm.").

The reasoning of these cases applies with full force to the case before the court today. The School Board at all times dealt with plaintiff, a confirmed child abuser, with restraint and good faith. Meanwhile plaintiff has managed to entangle the School Board in a meritless lawsuit, making unfounded accusations of racial bias and relying on federal and state law that, by no stretch of the imagination, could apply given the circumstances of this case.

Plaintiff's objections to the Magistrate's Report and Recommendation fit this general pattern. Plaintiff now asserts that the School Board's suspension of her employment without pay was the result of the School Board's breach of the continuing contract. Plaintiff ignores the fact that the School Board complied with the pertinent provisions of the Virginia Code in suspending her without pay. Under Va.Code Ann. § 22.1–315, the School Board may suspend a teacher, without pay, so long as she is granted a hearing before the School Board if the teacher wishes to be heard. In this case, as was earlier discussed, before the School Board suspended plaintiff without pay, it conducted a hearing on the matter (again, after already having conducted an extraordinarily long hearing previously). Therefore, the School Board's failure to grant plaintiff a hearing when it concluded that plaintiff

would be dismissed, although technically contrary to the Virginia Code, had no effect on plaintiff's suspension without pay, since a hearing preceded this decision. Accordingly, plaintiff's motion for summary judgment must be denied, and defendant's motion for summary judgment must be granted. Both parties' objections to the Magistrate's Report are overruled.

An appropriate Order shall this day issue.